*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0157P (6th Cir.)
File Name: 01a0157p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

DAVID ADAMS,
     *Plaintiff-Appellant,*

     *v.*

CITY OF BATTLE CREEK, a
municipal corporation;
JEFFREY P. KRUITHOFF, an
individual,
     *Defendants-Appellees,*

No. 99-1543

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 98-00233—David W. McKeague, District Judge.

Argued: August 8, 2000

Decided and Filed: May 11, 2001

Before: MERRITT, KRUPANSKY, and BOGGS, Circuit
Judges.

1

---

**COUNSEL**

**ARGUED:**   Marshall W. Grate, ROBERTS, BETZ & BLOSS, Grand Rapids, Michigan, for Appellant.   John Patrick White, VARNUM, RIDDERING, SCHMIDT & HOWLETT, Grand Rapids, Michigan, for Appellees. **ON BRIEF:**   Marshall W. Grate, ROBERTS, BETZ & BLOSS, Grand Rapids, Michigan, for Appellant.   John Patrick White, VARNUM, RIDDERING, SCHMIDT & HOWLETT, Grand Rapids, Michigan, Clyde J. Robinson, OFFICE OF THE CITY ATTORNEY, Battle Creek, Michigan, for Appellees.

MERRITT, J., delivered the opinion of the court, in which BOGGS, J., joined. KRUPANSKY, J. (pp. 11-22), delivered a separate opinion concurring in part and dissenting in part.

---

**OPINION**

---

MERRITT, Circuit Judge.  With certain exceptions, the federal wiretap act criminalizes and creates civil liability for intentionally intercepting electronic communications without a judicial warrant.  This case was brought under the federal wiretapping act, known as the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2522.  It raises the question of whether the police department may tap a police officer's pager without a warrant or notice to the officer.  The police department, through use of a duplicate or "clone" pager, tapped without a warrant the plaintiff's pager provided by the department because it erroneously thought he was assisting drug dealers.  The case turns on what is meant when the Act uses the phrase "in the ordinary course of business" to create two exceptions to the prohibition against wiretapping.

In the present case it is both clear and conceded that the definition of "intercept" in the Act includes pagers within the

In enacting the Wiretapping Act, Congress did not intend to prohibit all wiretapping or electronic monitoring. Hence, it created two statutory exceptions to liability, both of which cover the monitoring *sub judice*. The law enforcement officers of the City of Battle Creek Police Department monitored Adam's departmental pager in order to safeguard the integrity of their investigations. A legitimate interest provided the impetus for the monitoring, which did not extend beyond that interest in its scope or length.[22] I would affirm the district court's judgment. I therefore respectfully dissent.[23]

---

[22]Because I find that the implicated activity is within the exceptions provided by the act, I do not reach the issue as to whether the act contemplates holding police departments liable for the malfeasance of their employees. In addition, because I find that the district court properly awarded summary judgment in favor of the defendants, I would affirm the lower court's consequent denial of the plaintiff's motion for summary judgment.

[23]I concur in the majority's disposition of the Fourth Amendment claim and the qualified immunity issue.

language "acquisition of the contents of any . . . electronic . . . device."[1] Then, in the definition section for "electronic device," the statute creates two "in-the-ordinary-course-of-business" exceptions to wiretap liability. The scope and meaning of these two exceptions are up for interpretation in this appeal. The two exceptions are not altogether clear:

(5) "electronic, mechanical, or other device" means any device or apparatus which can be used to intercept a wire, oral, or electronic communication *other than* –

(a) any telephone or telegraph instrument, equipment or facility, or any component thereof, (i) furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business *and being used by the subscriber or user in the ordinary course of its business* or furnished by such subscriber or user for connection to the facilities of such service and used in the ordinary course of its business; or (ii) being used by a provider or wire or electronic communication service in the ordinary course of business, *or by an investigative or law enforcement officer in the ordinary course of his duties.*

18 U.S.C. § 2510(5) (emphasis added).

The first problem is what the underlined phrase "other than" (normally an adverbial phrase, *see Webster's Third Int'l Dict.* (1958)) is supposed to modify. Does it modify the immediately preceding action "to intercept [an] . . . electronic device," or does it act as an adjective, modifying "device or apparatus" or does it modify some other action or thought not expressed in clear language? The second problem is: does the use of "in-the-ordinary-course-of-business" language, as an exception, imply, and therefore mean, that the tapping of

---

[1]Section 2510(4) says: "'intercept' means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device. . . ."

the communication is so routine, customary or well accepted that the parties to the tapped communication would, should or did know of the tap. We will deal with these two issues of interpretation below.

**1. *The Meaning of the Phrase "Other Than."*** – There is no discussion in the case law of what the phrase "other than" in the statutory definition of "electronic, mechanical or other device" is to modify. Its dictionary label as an adverbial phrase would indicate that it is to modify the immediately preceding verb phrase "to intercept a wire, oral, or electronic communication." This does not make sense when read with the language that follows it.

If "other than" modifies "used to intercept . . . electronic communication,"the scope of the "other than" exception would be as broad as the statute itself. This means, therefore, that "other than" must modify the nouns "device or apparatus." The language immediately following "other than" is "any telephone or telegraph, or any component thereof," all of which are also nouns. A better word choice than the "other than" phrase probably would have been "excluding" because subparts (a) and (b) to § 2510 (5) are *exclusions* to the main definition. In any event, the cases discussing these exceptions apply "other than" this way, and it is the only way that makes sense.

**2. *Exceptions to Liability.*** – We conclude that the exceptions do not apply to this case. Both the "ordinary course of business" exception, or "business use" exception as it is also called, as well as the law enforcement exception, require that the interception of a communication be undertaken by employers or law enforcement agencies in the ordinary course of their businesses using equipment provided by a communications carrier as part of the communications network. For this exception to apply, we must find, first, that the equipment used to make the interception be "furnished to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business and being used by the subscriber or user in the ordinary

monitoring of Adams' departmental pager.[20] The monitoring was short-lived, effectuated no longer than required by its supporting purpose. The monitoring itself was hardly invasive as no personal messages were ever intercepted or recorded. In addition, because Adams had been informed that he was not to use departmental equipment for personal use, he had a limited expectation of privacy in the personal messages relayed by the pager. Moreover, Adams was aware that his equipment could be inspected at any time. It is true that Adams did not have specific notice that his pager could be monitored by the police department. However, in view of the seriousness of the justification proffered by the police department and the limited incursion on Adams' privacy interests, Alspaugh and Kruithoff were acting in the ordinary course of the department's business and of their law enforcement duties when they monitored Adams' pager by cloning it.[21]

---

[20]Adams has contended that the true motive for the cloning of the pager was far more involved than the purpose proffered by the appellees. Adams has alleged that Kruithoff monitored his activity because he had had an affair with Adams' wife a few years earlier. Indeed, Kruithoff has admitted having an affair with Adams' wife. And, for the purpose of reviewing the instant motion for summary judgment, it is reasonable to infer that Kruithoff indeed authorized the use of the cloned pager. However, it is undisputed that Alspaugh, not Kruithoff, raised concerns about Adams' possible role in sabotaging the drug investigations. It is undisputed that Alspaugh, not Kruithoff, maintained control of the cloned pager. Moreover, it is undisputed that Alspaugh did not provide Kruithoff (or anyone else) with a copy of the list he created during the course of the monitoring.

[21]The circumstances in *Briggs* provide a commercial analog to those in this case: the employer had a particularized suspicion that an employee had been providing company secrets to the competition; the employee had been warned not to disclose the secrets; and the monitored phone call was between the competitior and the employee. The *Briggs* Court found that "it is within the ordinary course of business to listen in on an extension phone for at least so long as the call involves the type of information he fears is being disclosed." *Briggs*, 630 F.2d at 420.

F.3d 688, 692-94 (2d Cir. 1996); *United States v. Van Poyck*, 77 F.3d 285, 292 (9th Cir. 1996).  If the party has received advance notice of monitoring, then that party may ordinarily be said to have consented to the subsequent monitoring.  Hence, by reading the business use and law enforcement exceptions to include actual notice, the panel majority has made those exceptions superfluous in light of the consent exception.[18]  *See Amati*, 176 F.3d at 955 ("If there is actual notice, there will normally be implied consent.  So if the 'ordinary course' exclusion required proof of notice, it would have no function in the statute because there is a separate statutory exclusion for cases in which one party to the communication has consented to the interception.") (citations omitted).

Given the fact that the ordinary course exclusions require the reviewing court to engage in a reasonableness analysis as to the nature, scope, and justification of the monitoring, it is important to note the circumstances surrounding the instant monitoring.  In order to maintain the integrity of their drug investigations,[19] the police department initiated surreptitious

---

[18]The panel majority places talismanic reliance on the notion that the monitoring must be routine.  However, that would encourage businesses to record all phone calls when the asserted business justification required only limited monitoring.  Such a result would be an unnecessary infringement on the privacy of any "innocent bystanders."  *See Briggs*, 630 F.2d at 420 n.9 ("A general practice of surreptitious monitoring would be more intrusive on employees' privacy than monitoring limited to specific occasions.").

[19]The department has provided numerous reports of allegations of Adams' involvement in drug activity.  The fact that none of these allegations have been proven is not dispositive.  Rather, the issue is whether, given the seriousness of these allegations and the harm which could occur to narcotics investigators if these allegations were true, defendants acted in the ordinary course of their duties.

course of its business . . ." § 2510(5)(a)(i).  Although plaintiff raises the issue of whether a clone pager fits within the definition prescribed in the exception, it is clear that the clone pager, a piece of electronic communication equipment, was provided to the City by MobileComm, a Bell South company, in the ordinary course of its business as a provider of wire and electronic communication services.  We find, as did the district court,  that the first part of the exception is met.

The second part of the exception requires that the clone pager be used in "the ordinary course" of the police department's business.  "Ordinary course of business" is not defined in the statute, but it generally requires that the use be (1) for a legitimate business purpose, (2) routine and (3) with notice.  There is some disagreement in the case law about whether "covert" monitoring can ever be in the "ordinary course of business."  Although we do not find that the statute requires actual consent for the exception to apply, we do hold that monitoring in the ordinary course of business requires notice to the person or persons being monitored.  Because it is undisputed here that plaintiff was not given any notice that his pager was being monitored, the exceptions cannot apply.

Most courts interpreting these exceptions have held that advance notice in some form is necessary.  "What is ordinary is apt to be known; it imports implicit notice." *Amati v. City of Woodstock*, 176 F.3d 952, 955 (7th Cir.), *cert. denied*, 120 S. Ct. 445 (1999).  In *Bohach v. City of Reno*, 932 F. Supp. 1232 (D. Nev. 1996), police officers claimed that the police department's retrieval of stored messages generated by their pagers was a violation of the Act.  The court held that the officers had no reasonable expectation of privacy when the police department warned pager users *in advance* that their messages would be logged on the network.  In *Sanders v. Robert Bosch Corp.*, 38 F.3d 736, 740-42 (4th Cir. 1994), the Fourth Circuit held that recording all telephone conversations on certain lines after bomb threats were received by the company was not in the ordinary course of business where the employees did not receive notice of the recording.

Defendants here did not routinely monitor officers' pagers or give notice to officers that random monitoring of their department-issued pagers was possible. We disagree with defendants to the extent that they contend that plaintiff impliedly consented to the interception of his pages by the clone pager simply because he accepted and used a department-issued pager. The general policy of the department that department-issued equipment, which includes the pager, was not to be "converted to personal use" cannot provide the necessary notice to officers to find consent to surreptitious interception of their messages by clone pagers. The so-called policy prohibiting personal use cannot form an after-the-fact justification for intercepting plaintiff's pager where the policy had not been enforced and the department conceded it was aware that pagers were used by many members of the force for personal use.

We do not find any need under the facts presented here to analyze the "business use" and "law enforcement" exceptions separately. Congress most likely carved out an exception for law enforcement officials to make clear that the routine and almost universal recording of phone lines by police departments and prisons, as well as other law enforcement institutions, is exempt from the statute. *See First v. Stark Cnty. Bd. of Comm'rs*, No. 99-3547, 2000 WL 1478389 (6th Cir. Oct. 4, 2000). Such a system routinely and indiscriminately records all phone activity in and out of the police department. This practice is well known in the industry and in the general public, and the courts have ruled that even prisoners are entitled to some form of notice that such conversations may be monitored or recorded. *United States v. Paul*, 614 F.2d 115 (6th Cir. 1980); *see also, e.g., United States v. Van Poyck*, 77 F.3d 285 (9th Cir. 1996) (detention center); *United States v. Daniels*, 902 F.2d 1238, 1245 (7th Cir. 1990); *United States v. Amen*, 831 F.2d 373, 378 (2d Cir. 1987); *Campiti v. Walonis*, 611 F.2d 387 (1st Cir. 1979)(monitoring of specific inmate call, without regulation or notice, and not routinely done, violates statute).

itself be justified by a valid business purpose, or, perhaps, at least must be shown to be undertaken normally.").[17]

Moreover, the panel majority has ignored an express provision of the Wiretapping Act in holding that actual notice is required: the Wiretapping Act does not prohibit electronic eavesdropping where one of the parties has consented to the monitoring. *See* 18 U.S.C. § 2511(1)(c) ("It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception."). Courts have determined that such consent may be explicit or it may be implied from the surrounding facts. *See, e.g., United States v. Workman*, 80

---

[17]The panel majority cites *Amati v. City of Woodstock*, 176 F.3d 952 (7th Cir. 1999), and *Sanders v. Robert Bosch Corp.*, 38 F.3d 736 (4th Cir. 1994), as support for their mandate that notice is required. Neither case supports requiring notice as a *sine qua non* element of the ordinary course test. In fact, *Amati* expressly held otherwise: "The plaintiffs argue that wiretapping cannot be 'in the ordinary course of law enforcement' unless there is express notice to the people whose conversations are being listened to. The statute does not say this, and it cannot be right." *Amati*, 176 F.3d at 955. The *Sanders* court's analysis makes clear that the court was balancing the asserted business interest against the employee's interest in advance notice:

> Covert use of a surveillance device must be justified by a valid business purpose. Here, the justification advanced for the ongoing interception of telephone calls, *i.e.*, the fear of bomb threats, does not in any way explain the fact that Bosch failed to inform any Guardsmark personnel, other than the supervisors, of the use of the voice logger. In short, there is no business reason asserted for the decision not to notify all the Guardsmark employees of the use of the voice logger."

*Sanders*, 38 F.3d at 741-42 (footnotes omitted). The panel majority has also cited a district court case, *Bohach v. City of Reno*, 932 F. Supp. 1232 (D. Nev. 1996), which did not deal with the exclusions at issue here, but instead focused on 18 U.S.C. § 2701 which permits internet service providers to store and retrieve electronic messages. *See Bohach*, 932 F. Supp. at 1236-1237.

officials have given actual notice to those being monitored.[16] While I agree that a legitimate justification is required, nevertheless, I do not find support in the statute or the associated case law for requiring in all circumstances advance notice or routine monitoring.

Courts have required notice of the possibility of monitoring in cases where the quantum of the asserted business or law enforcement interest is low. *See, e.g., Sanders v. Robert Bosch Corp.*, 38 F.3d 736, 741-742 (4th Cir. 1994) ("In short, there is no business reason asserted for the decision not to notify all the Guardsmark employees of the use of the voice logger."). However, when confronted with more substantial justifications, courts have permitted businesses to monitor without advance notice. *See, e.g., Briggs v. American Air Filter Co., Inc.*, 630 F.2d 414, 420 n.9 (5th Cir. 1980) ("Since the specific justification advanced here is so closely tied to a legitimate business purpose, we have no hesitation holding that there is nothing extraordinary about McClure's act of listening in. Were the business justification less compelling, the absence of any company policy or prior warnings concerning use of company telephones might be more significant."); *Arias v. Mutual Central Alarm Service, Inc.*, 202 F.2d 553, 559 (2d Cir. 2000) ("Whether notice is required depends on the nature of the asserted business justification, and here, where the recording is at least in part intended to deter criminal activity, the absence of notice may more effectively further this interest."); *Berry v. Funk*, 146 F.3d 1003, 1009 ("[If] covert monitoring is to take place it must

---

[16]While the law enforcement exception has no such requirement, the business use exception requires that the electronic monitoring device be provided in the course of the provider's business. I agree with the panel majority's determination that the cloned pager was provided to the police department in the course of the provider's, MobileComm's, business. Adams' arguments to the contrary are unavailing.

**3. *Municipal Liability Under the Privacy Act.*** – Plaintiff seeks to hold the City liable under the wiretapping act, as well as Jeffrey Kruithoff, a police department employee. Defendants raise the question of whether the City is a "person" for purposes of the Act. The statute defines "person" as "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust or corporation." 18 U.S.C. § 2510(6).

Most courts addressing the issue have held that the 1986 amendments indicate that a governmental entity may be liable in a civil suit under the Act. *Organizacion JD Ltda.. v. United States Dep't of Justice*, 18 F.3d 91, 94-95 (2d Cir. 1994); *Conner v. Tate*, No. Civ. A. 1:00-CV-1723TW, ___ F. Supp. 2d ___, 2001 WL 128449, at **2-3 (N.D. Ga. Feb. 9, 2001); *Dorris v. Absher*, 959 F. Supp. 813, 819-20 (M.D. Tenn. 1997) (municipal liability exists), *aff'd in part on other grounds and rev'd in part*, 179 F.3d 420 (6th Cir. 1999) (claims against county were settled prior to appeal and therefore not addressed on appeal); *PBA Local No. 38 v. Woodbridge Police Dep't*, 832 F. Supp. 808, 822-23 (D.N.J. 1993).

Only the Seventh Circuit has ruled to the contrary. *Amati v. City of Woodstock*, 176 F.3d 952, 956 (7th Cir.), *cert. denied*, 120 S. Ct. 445 (1999). It based its cursory decision to exempt governmental entities from liability under the Act solely on the plain language of the definition of "person" in the statute, which does not expressly include governmental entities; but it did not deal with the meaning of the word "entity." Finding no ambiguity, it refused to look to the legislative history. But we look to the legislative history in order to give meaning to the word "entity," which was added to the definition in 1987.

The provision of the Act providing for civil liability, section 2520,[2] was amended in 1987 and made part of the 1986 Privacy Act. The amendment added the words "or entity" to those who may be held liable under the Act. The addition of the words "entity" can only mean a governmental entity because prior to the 1986 amendments, the definition of "person" already included business entities. In order for the term not to be superfluous, the term "entity" necessarily means governmental entities. As support for this view, we note that the amendment added the same language to the civil liability provision for interception of stored wire and electronic communications under 18 U.S.C. § 2707(a). The Senate Committee Report summarizing § 2707, the parallel section for liability for intercepting stored communications, specifically states that the word "entity" includes governmental entities. S. Rep. No. 541, 99th Cong., 2d Sess. 43 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3555, 3597.

Based on the amendments to the statute and the legislative history behind them, as well as the case law considering the issue, we hold that governmental entities may be liable under 18 U.S.C. § 2520. Finding that a municipality may be liable under the Act, we conclude that questions of material fact remain as to who was involved in authorizing the interception and how it arose. Summary judgment is not appropriate on this issue at present because the facts are undeveloped. We remand it to the district court for further development of this issue.

**4. *The Fourth Amendment.*** – Plaintiff also claims that monitoring his pager through use of the clone pager constitutes an illegal "search and seizure" in violation of his

---

[2]18 U.S.C. § 2520 provides:

Except as provided in 2511(2)(ii), any person whose wire, oral or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity which engaged in that violation such relief as may be appropriate.

to the subscriber or user by a provider of wire or electronic communication service in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business or furnished by such subscriber or user for connection to the facilities of such service and *used in the ordinary course of its business*;[13] or (ii) being used by a provider of wire or electronic communication service in the ordinary course of its business, or by an *investigative or law enforcement officer in the ordinary course of his duties*[.][14]

18 U.S.C. § 2510(5).[15]

The panel majority has determined that those exceptions apply only when a legitimate purpose supports the monitoring, the monitoring is routine, and the monitoring

---

[13]This provision is normally referred to as the "business use exception" or the "extension phone exception."

[14]This provision is normally referred to as the "law enforcement exception" or the "prison phone exception."

[15]Law enforcement is the "business" of the City of Battle Creek Police Department. *But see Amati*, 176 F.3d at 955 ("[The business use exception] is intended for situations in which a business or other entity, presumably one not involved in law enforcement (for otherwise this exclusion would duplicate the one for eavesdropping in the ordinary course of law enforcement), records calls to or from its premises in order to monitor performance by its employees."). The panel majority has imputed to the law enforcement section a solitary purpose–that of excluding from the act's coverage the law enforcement practice of monitoring inmate phone calls– without any evidence that Congress intended that the exception be so limited. The cases which it has cited in support of that proposition have merely ruled that the law enforcement exception applies to inmate phone calls. None of the cases have limited the purview of the law enforcement exception to those circumstances.

is entitled to a judgment as a matter of law." FEDERAL RULE OF CIVIL PROCEDURE 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Ezzo's Investments, Inc. v. Royal Beauty Supply, Inc.*, 243 F.3d 980, 985 (6th Cir. 2001). Courts presented with motions for summary judgment must consider the tendered evidence, and the reasonable inferences therefrom, in the light most favorable to the non-movant. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 588 (1986); *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The reviewing court conducts a *de novo* examination of a district court's order awarding summary judgment. *See American Medical Security, Inc. v. Auto Club Ins. Ass'n of Mich.*, 238 F.3d. 743, 749 (6th Cir. 2001).

Wiretapping or monitoring electronic communications has been illegalized and is subject to civil and criminal penalties. *See* 18 U.S.C. § 2511(1)(a) ("Except as otherwise specifically provided in this chapter any person who–(a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication [is subject to penalties described in 18 U.S.C. § 2511(4)(a).]"). In defining the term "electronic, mechanical, or other device,"[12] Congress excluded certain types of non-consensual monitoring from the purview of the statute:

> "electronic, mechanical, or other device" means any device or apparatus which can be used to intercept a wire, oral, or electronic communication other than--
>
> (a)  any telephone or telegraph instrument, equipment or facility, or any component thereof, (i) furnished

---

[12] "'[I]ntercept' means the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any *electronic, mechanical, or other device*." 18 U.S.C. § 2510(4).

Fourth Amendment rights, actionable through 42 U.S.C. § 1983. The defendants argued, and the district court agreed, that plaintiff had no right to privacy in his department-issued pager and that no Fourth Amendment violation occurred.

Supreme Court precedent makes it clear that courts should avoid unnecessary adjudication of constitutional issues. *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("The Court will not pass on a constitutional question, although properly presented by the record, if there is also present some other ground upon which the case may be disposed of."). *Accord United States v. Vaughn*, No. 97-3539, 1998 WL 774004, *3 (6th Cir. Oct. 13, 1998). Where a statutory or nonconstitutional basis exists for reaching a decision, as it does here, it is not necessary to reach the constitutional issue.

One application of this doctrine is the principle of statutory construction that states that a comprehensive statute, like the federal wiretapping statute, designed to protect specific constitutional values may be read to provide the exclusive remedies in the field so long as the statute itself suffers no constitutional infirmity. Sutherland Statutory Construction § 499-500 (1984 ed.). *See, e.g., Preiser v. Rodriguez*, 411 U.S. 475, 489-90 (1973) (although § 1983 by its terms was literally applicable to prisoners' actions, some actions lie under habeas corpus as "the more specific act"); *Lee v. Hughes*, 145 F.3d 1272, 1276-77 (11th Cir. 1998) (given comprehensive statutory scheme established by Civil Service Reform Act, federal officer was precluded from raising § 1983 claim); *NAACP, Detroit Branch v. Detroit Police Officers Ass'n*, 900 F.2d 903, 912-13 (6th Cir. 1990) (plaintiff cannot bring claims under §§ 1981 and 1983 that fall within Title VII's parameters). The Electronic Communications Privacy Act is part of detailed legislative scheme under Title III of the Omnibus Crime and Control Act of 1986. The legislation seeks to balance privacy rights and law enforcement needs, keeping in mind the protections of the Fourth Amendment against unreasonable search and seizure. Congress made the Act the primary vehicle by which to

address violations of privacy interests in the communication field. *Berry v. Funk*, 146 F.3d 1003, 1013 (D.C. Cir. 1998) (citing *City of Milwaukee v. Illinois*, 451 U.S. 304, 314 (1981)). No claim is made that the statute is unconstitutional or that it is less protective of privacy rights than the Fourth Amendment. The plaintiff makes no claim that Fourth Amendment rights, as they relate to wiretapping, are broader or more comprehensive than the federal statute. There is no difference between the conduct relevant to plaintiff's statutory claim and the conduct relevant to his constitutional claim. Because no argument is made that the substantive or remedial standards provided by the Fourth Amendment differ from the federal statute, we do not reach any question of interpretation under the Fourth Amendment. All such constitutional issues are pretermitted.

   **5. *Qualified Immunity for Kruithoff.*** – As an alternative to affirming summary judgment, Kruithoff urges us to affirm the district court as to him on the ground of qualified immunity for both the Privacy Act and Fourth Amendment claims. The district court did not rule on this defense because it found no liability and we generally do not address issues that were not addressed below. In addition, a factual dispute remains as to Kruithoff's role, if any, in authorizing the clone pager. Two witnesses testified that he authorized its use, but Kruithoff denies this. Qualified immunity is generally not appropriate where questions of fact remain. *Johnson v. Jones*, 515 U.S. 304, 319-20 (1995).

### CONCLUSION

   For the foregoing reasons, we reverse the district court's grant of summary judgment to defendants, affirm the denial of plaintiff's partial motion for summary judgment and remand to the district court for further proceedings.

plaintiff may have been involved in leaking drug raid information to drug traffickers was understandably a matter of grave concern to Detective Sergeant Patrick Alspaugh, Supervisor of the Special Investigations Unit, whose concern prompted the cloning of plaintiff's pager. It was also a matter of much greater significance to the police department's "business" than an employee's improper use of a telephone for personal purposes. Moreover, the extent of the intrusion was minimal. The monitoring was based on particularized suspicion of wrongdoing, lasted only 10-14 days, and yielded, with the exception of one verbal message concerning a police memorial service, merely a listing of telephone numbers from which plaintiff was called. No monitoring of conversations took place. The recorded telephone numbers were found not to be incriminating and the monitoring was voluntarily discontinued.

   Under these circumstances, as to which there is no genuine issue of material fact, the Court holds the subject monitoring of plaintiff's pager, limited in duration and minimally intrusive, was justified by a valid business purpose.

*Adams v. City of Battle Creek, et al.*, No. 98cv233, slip op. at 8-9 (W.D. Mich. April 28, 1999). The district court further held that Adams' Fourth Amendment rights were not violated by the defendants' surreptitious monitoring as he had no reasonable expectation of privacy in the use of his departmentally-provided pager.[11] This appeal timely followed.

   Summary judgment should "be rendered ... if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

---

[11] The district court dismissed Adams' other claims without prejudice as the district court declined to exercise supplemental jurisdiction over them in the absence of any federal claims. *See* 28 U.S.C. § 1367(c).

On March 9, 1998, Adams filed the instant complaint,[7] alleging seven counts against defendants Kruithoff, Pope,[8] and the City of Battle Creek Police Department (collectively "defendants"): (1) defendants had violated the Wire and Electronic Communications Interception Act, 18 U.S.C. § 2510, *et seq.*;[9] (2) defendants had infringed upon Adams' Fourth Amendment rights against unreasonable searches and seizures; (3) defendants had violated Michigan's wiretapping statute; (4) defendants had invaded Adams privacy in violation of Michigan law; (5) defendants had violated Michigan's civil rights act; (6) defendants had intentionally inflicted emotional distress in violation of Michigan law; (7) Kruithoff's affair with Adams' wife had resulted in a loss of consortium to Adams in violation of Michigan law.[10] The parties filed cross- motions for summary judgment. The lower court granted the defendants' motion and denied the plaintiff's motion. The district court held that the defendants' surreptitious monitoring fell within the business use exception contained in the wiretapping act:

> The sensitive nature of information relating to drug trafficking investigations is obvious; maintenance of its confidentiality essential to the success of the mission and safety of law enforcement officers. Suspicion that

---

[7] In addition to learning of the monitoring, Adams discovered that Kruithoff had had an affair with Adams' wife in 1990. Adams has contended that this affair prompted the monitoring of Adams' cloned pager.

[8] All claims against Pope were voluntarily dismissed on February 23, 1999.

[9] *See* 18 U.S.C. § 2511(a) ("Except as otherwise specifically provided in this chapter any person who–(a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication [is subject to penalties described in 18 U.S.C. § 2511(4)(a).]").

[10] This claim was voluntarily dismissed on September 8, 1998.

---

## CONCURRING IN PART, DISSENTING IN PART

KRUPANSKY, Circuit Judge, concurring in part and dissenting in part. The panel majority has reversed the district court's grant of summary judgment to the defendant-appellees, finding that the electronic monitoring at issue in this case did not fall within one of the statutory exclusions provided by the federal wiretapping laws. In so doing, the panel majority has disregarded the plain language of the controlling statute by imputing a notice requirement into the ordinary course of business and law enforcement tests of the federal wiretapping laws. Because I am persuaded that the officers of the City of Battle Creek Police Department monitored David Adams's use of his alphanumeric pager in the ordinary course of its business, *see* 18 U.S.C. § 2510(5)(a)(i), and in the ordinary course of exercising their law enforcement duties, *see* 18 U.S.C. § 2510(5)(a)(ii), I respectfully dissent.

Plaintiff-Appellant David Adams ("Adams") has served as a law enforcement officer[1] for Defendant-Appellee City of Battle Creek Police Department since 1986. In conjunction with his position as a law enforcement officer, Adams was assigned an alphanumeric pager.[2] Numerous allegations of complicity in drug activity have marked his tenure: (1) in 1989, his patrol partner was charged with drug trafficking; (2) a number of informants alleged that Adams had protected

---

[1] Until 1993, Adams served as a patrolman. In 1993, Adams was promoted to the position of detective.

[2] The police department had given Adams a copy of departmental policy which indicated "Department issued equipment, supplies and uniforms, will at no time be converted [to] personal use." The police department had notified Adams that "[it was] the policy of the Police Department to perform regular audits and inspections of all department issued equipment. These inspections ensure proper maintenance and use of all department equipment and supplies."

drug dealers; (3) Adams had appeared to maintain a close friendship with a local drug dealer. However, investigators had failed to surface substantial evidence of wrongdoing by Adams.

In 1995, Sgt. Patrick Alspaugh ("Alspaugh"), head of the Special Investigations Unit,[3] became increasingly concerned that the department's drug investigations were being compromised by an inside source. On two separate occasions, acting on reliable intelligence[4] that drug transactions were ongoing at certain residences, police officers arrived at those locations to find that there were no drugs on the premises. On a third occasion, while attempting to search a residence, officers were fired upon by perpetrators attempting to flee upon the officers' arrival. Given the nature of the targets' ability to evade police investigation, Alspaugh reasoned that a member of the police department had been informing the targets of the investigation before the officers were able to arrive and conduct their search.

Alspaugh had assigned Officer Kathy Klomparens ("Klomparens"), a member of the Special Investigations Unit, to these cases. Alspaugh subsequently learned that Adams and Klomparens had had frequent contacts outside of the workplace. Alspaugh also learned that Adams may have been a close confidant of one of the targets of the unsuccessful narcotics investigations. Recalling the earlier allegations against Adams, Alspaugh requested of Jeffrey Kruithoff ("Kruithoff"), then-Deputy Chief of Police, that Adams' official pager be cloned in order to determine if Klomparens was informing Adams of the status of the active

---

[3]The Special Investigations Unit of the City of Battle Creek Police Department is primarily responsible for narcotics investigations.

[4]The police department would station officers outside these residences. These officers would then monitor the residences in the hours preceding any given search.

investigations. The parties have disputed whether Kruithoff authorized the use of the cloned pager.[5]

As Adams was paged by unidentified third parties, Alspaugh wrote down the numbers. He then attempted to determine if any of the numbers matched any of Klomparens's personal phone or pager numbers. Alspaugh intercepted one text message which informed Adams of the time and place of a police funeral. Because the cloned pager had not provided any incriminating information, Alspaugh destroyed the list after four or five days and discontinued monitoring the cloned pager. Alspaugh then contacted a member of the Federal Bureau of Investigation, who informed him that Alspaugh's surreptitious monitoring of Adams' pager may have been illegal. Alspaugh promptly returned the cloned pager to the telecommunications concern.

In 1996, Michael Lind, an intelligence officer,[6] informed Adams of the surreptitious monitoring of his pager. Until that time, no member of the police department had informed Adams that he had been the target of an investigation into the possibility that he had been aiding drug traffickers in their attempts to evade police detection.

---

[5]Kruithoff has claimed that then-Chief of Police Thomas Pope authorized the use of the cloned pager. As this matter has come before this court on an appeal of the district court's order granting defendants' motion for summary judgment, it will be assumed for the purposes of this opinion that Kruithoff authorized the use of the cloned pager.

[6]Lind had applied to law school in 1996 and had disclosed on his law school application that he may have criminally violated the federal wiretapping laws. Lind felt it necessary to apprise Adams of his possibly felonious conduct.