Gilbert C. GARZA, Plaintiff,

v.

**BEXAR METROPOLITAN WATER DISTRICT, Gilbert Olivares, Adolfo Ruiz, Victor Villarreal, James Clements, Blanche Atkinson, Deborah Eaton, Jose Gallegos, Leslie Wenger and Andy Carr, Defendants.**

**Civil Action No. SA–08–CA–839–OG.**

United States District Court,
W.D. Texas,
San Antonio Division.

March 4, 2009.

Reid E. Meyers, Attorney at Law, San Antonio, TX, for Plaintiff.

Bradford Eugene Bullock, William M. McKamie, Law Offices of William M. McKamie, P.C., Albert Lopez, Law Offices

of Albert Lopez, Deborah L. Leach, Attorney at Law, Charles Straith Frigerio, Attorney at Law, Hector Xavier Saenz, Law Office of Charles S. Frigerio, Patrick J. Boone, Boonemediation.Com, San Antonio, TX, for Defendants.

## ORDER

ORLANDO L. GARCIA, District Judge.

Pending before the Court are motions to dismiss filed by Defendants Adolfo Ruiz (Dkt. # 4), Gilbert Olivares (Dkt. # 5), and Bexar Metropolitan Water District and its board members (Dkt. # 3, 6). After reviewing the motions, responses, the allegations in the complaint and the applicable law, the Court finds that Defendants' motions should be denied.

### I.

*Allegations in the complaint*

This case was initiated in state court, but removed after Plaintiff amended his petition and alleged a federal cause of action. (*See* Dkt. # 1, Plaintiff's First Amended Petition). In his amended petition, Plaintiff claims that he witnessed several improprieties while employed as Purchasing Manager at Bexar Metropolitan Water District ("Bexar Met"). When he questioned the alleged improprieties, he was instructed to ignore them. Plaintiff claims that he could not bear the working conditions any longer, and resigned in August 2007.[1] Plaintiff then specifically alleges:

28. Plaintiff has recently become aware and confirmed that during his final four months of employment his office telephone calls were being monitored by Olivares and Ruiz. In fact, he has recently listened to those recorded communications. It is likely that nearly 100 telephone communications, both non-business related and personal calls to his wife and daughter, were recorded and listened to by Defendant Olivares and, upon information and belief, Ruiz and Villarreal.

29. Olivares, Ruiz and, upon information and belief, Villarreal, listened to Plaintiff's personal calls and the calls of other employees.

30. Upon information and belief, other members of the BexarMet Board of Directors knew of the illegal interceptions or should have known about them.

31. At the time of these illegal acts, BexarMet had no employee or manager policy which informs managers that their telephone calls are subject to interception or monitoring.

32. At no time during his employment did Plaintiff authorize, consent, give permission or waive his rights to Defendants, either affirmatively, in writing or implied, to monitor his telephone calls.

33. At no time during his employment did Defendants inform Plaintiff that Plaintiff's calls would or could be monitored or recorded by Defendants.

34. At all times during his employment, Plaintiff had an expectation of privacy in his office, particularly during his personal telephone calls to his wife and others.

35. At no time did his wife or other parties with whom Plaintiff was speaking to on the telephone know that the calls were being recorded or monitored or authorize the telephonic intercepts/monitoring.

36. Defendants' recording and the monitoring of Plaintiff's telephone calls were not in the ordinary course of

---

1. Plaintiff states that he was employed from March 2006 until August 2007.

business but maliciously invaded Plaintiff's privacy in order to fulfill their own curiosity.

(Plaintiff's First Amended Petition, p. 4) (emphasis added). Plaintiff asserts causes of action for violations of the Federal Wiretap Act, 18 U.S.C. § 2510 et seq., and the Texas Wiretap Act, Chapter 123 of the Texas Civil Practice and Remedies Code. (Plaintiff's First Amended Petition, p. 5). Plaintiff seeks both damages and injunctive relief.

## II.

*Legal standard under rule 12(b)(6)*

█ Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief may be granted." Fed. R.Civ.P. 12(b)(6). A court must not dismiss a complaint for failure to state a claim unless the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007); *Sonnier v. State Farm Mut. Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir.2007). "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 127 S.Ct. at 1964–65 (internal quotations omitted). The complaint must contain enough factual allegations that, when viewed in the light most favorable to plaintiff and assumed to be true, "raise a right to relief above the speculative level." *Twombly,* 127 S.Ct. at 1965; *see also Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007). "[W]hen the allegations in a complaint, however true, could not raise a claim of

entitlement to relief, this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly,* 127 S.Ct. at 1966.

## III.

*Defenses and legal analysis*

A. *Federal Wiretap Act:*

█ Bexar Met contends the Federal Wiretap Act does not apply to governmental entities, but the prevailing view is to the contrary. Section 2520, the civil remedies provision, did not apply to governmental entities prior to 1986.[2] However, section 2520 was amended in 1986 to provide that "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person *or entity* which engaged in that violation such relief as may be appropriate." 18 U.S.C. § 2520 (emphasis added). This section was amended again in 2001 to exclude only the United States as a responsible party. The statute now provides that the complainant may recover "from the person *or entity, other than the United States,* which engaged in that violation ...". 18 U.S.C. § 2520 (emphasis added). While there is a split in authority, the majority of federal courts that have addressed this issue have determined that governmental entities may be held liable for civil damages under the 1986 amendments. *Adams v. City of Battle Creek,* 250 F.3d 980, 985 (6th Cir.2001); *Williams v. City of Tulsa,* 393 F.Supp.2d 1124, 1132–33 (N.D.Okla.2005); *Conner v. Tate,* 130 F.Supp.2d 1370, 1374–75 (N.D.Ga.2001); *Dorris v. Absher,* 959 F.Supp. 813, 820 (M.D.Tenn.1997), aff'd in part, rev'd in part on other grounds, 179 F.3d 420 (6th

---

**2.** Prior to 1986, section 2520 simply allowed a civil action against any "person" engaging in a violation. The definition in section 2510 defines "person" as "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation." 18 U.S.C. § 2510.

Cir.1999); *PBA Local No. 38 v. Wood-bridge Police Dept.*, 832 F.Supp. 808, 822–23 (D.N.J.1993); *Bodunde v. Parizek*, 1993 WL 189941 *3–4 (N.D.Ill.1993).

■ In reaching this conclusion, the courts have gone beyond the language in the statute, which does appear ambiguous on its face, to analyze the statutory scheme and examine the legislative history. As the Sixth Circuit explained in the *City of Battle Creek*, the definition of "person" prior to the 1986 amendments expressly included business entities, but governmental entities were not mentioned. 250 F.3d at 985. The term "entity," added in 1986, would be superfluous if it was not intended to include governmental entities. *Id.* Moreover, when amending section 2520(a), Congress made an identical amendment to 18 U.S.C. § 2707(a) in the same legislation. *Id.* at 985.[3] The Senate Committee Report on section 2707 specified that the word "entity" was meant to include governmental entities. *Id.* (citing S.Rep. No. 541, 99th Cong., 2d Sess. 43 (1986), reprinted in 1986 U.S.C.C.A.N. 3555, 3597).[4] The 2001 amendment, part of the USA PATRIOT Act, carved out an exception for the United States in response to the federal government's need to increase surveillance domestically and abroad to combat terrorism. ANDREW AYERS, *The Police Can Do What? Making Local Governmental Entities Pay for Unauthorized Wiretapping*, 19 N.Y.L. Sch. J. Hum. Rts. 651, 653 (2003). There would have been no reason for Congress to carve out an exception for the United States if governmental entities could not be sued under the statute. *City of Tulsa*, 393 F.Supp.2d at 1132–33 ("Congress' subsequent amendment in 2001 to exclude the United States from entities that could be liable evidences a Congressional understanding that the 1986 amendment created governmental liability").[5]

■ Defendant Olivares and Ruiz contend the claims against them in their individual capacity should also be dismissed because they acted in good faith and the doctrine of qualified immunity applies. The Federal Wiretap Act expressly provides for a good faith defense if the defendant relied on: a court warrant or order, a grand jury subpoena, legislative authorization, statutory authorization, a request of an investigative or law enforcement official under section 2518(7), or a good faith determination that section 2511(3) permitted the conduct complained of. *See* 18 U.S.C. § 2520(d). It does not appear that Defendants herein relied on any type of official authorization, as listed in this provision.

■ Moreover, the doctrine of qualified immunity requires objective reasonableness, which is not evident in this case. Plaintiff has alleged that he had an expectation of privacy, and that Defendants intercepted, listened to and recorded his telephone calls without his knowledge or

---

3. The 1986 amendments, entitled the Electronic Communications Privacy Act of 1986, were intended to broaden the scope of violations of personal privacy. ANDREW AYERS, *The Police Can Do What? Making Local Governmental Entities Pay for Unauthorized Wiretapping*, 19 N.Y.L. Sch. J. Hum. Rts. 651, 679 (2003). Section 2520 applies to intercepted communications and section 2707 applies to stored communications, but the term "entity" was added to both civil remedies provisions.

4. This was recognized by the Second Circuit when it determined that the U.S. Department of Justice could be sued under the 1986 amendments. *Organizacion JD Ltda. v. U.S. Dept. of Justice*, 18 F.3d 91, 94–95 (2nd Cir. 1994).

5. After the 1986 amendments but prior to the 2001 amendment, the U.S. Secret Service was sued under the Federal Wiretap Act in *Steve Jackson Games, Inc. v. U.S. Secret Service*, 36 F.3d 457 (5th Cir.1994); *see also Organizacion JD Ltda.*, 18 F.3d at 94–95, in which the Department of Justice was sued.

consent. (Dkt. # 1, Plaintiff's Amended Petition). In his motion, Defendant Olivares cites the Bexar Met employee handbook, which allegedly states that "Bexar Met reserves the right to monitor and access any phone or email messages stored on its voice mail and e-mail systems." (Dkt. # 5, p. 4).[6] However, that is not what allegedly happened in this case. According to Plaintiff's pleading, Defendants did not simply listen to his stored voice mail messages; instead, they intercepted and listened to entire telephone conversations.[7] Thus, Plaintiff has alleged sufficient facts to overcome any qualified immunity arguments at this juncture.

### B. Texas Wiretap Act:

Defendants claim that Plaintiff's cause of action under the Texas Wiretap Act, contained in Chapter 123 of the Texas Civil Practice and Remedies Code, should be dismissed based on the intentional tort exclusion and election of remedies provision in the Texas Tort Claims Act, which is contained in Chapter 101 of the Texas Civil Practice and Remedies Code. However, Plaintiff has not asserted any claims that would fall under the Texas Tort Claims Act ("TTCA"). *See Kerrville HRH, Inc. v. City of Kerrville*, 803 S.W.2d 377, 381 (Tex.App.-San Antonio 1990, writ denied) (City was sued under the DTPA and the Fraud in Real Estate Act; the TTCA was not invoked and did not apply).

The TTCA states that "[t]he remedies authorized by this chapter are in addition to any other legal remedies." Tex. Civ. Prac. & Rem.Code Ann. § 101.003 (Vernon 2005). If a plaintiff chooses to assert a tort claim under the TTCA, he is obviously bound by the limitations and remedies stated therein. *State Dep't of Highways v. Dopyera*, 834 S.W.2d 50, 54 (Tex.1992); *Schauer v. Morgan*, 175 S.W.3d 397, 401 (Tex.App.-Houston [1st Dist.] 2005, no pet.). However, Plaintiff is not asserting any tort claims under the TTCA and Defendants have not cited any legal authority to support the argument that Plaintiff's statutory claim under the Texas Wiretap Act is restricted or bound by the limitations in the TTCA.

As noted by Plaintiff, the Texas Wiretap Act was fashioned after the Federal Wiretap Act. The Texas statute mirrors the federal statute in several respects and makes reference to it. Moreover, the definition of a "person" who may be sued under the Texas Wiretap Act includes the government or a governmental subdivision or agency. Tex. Civ. Prac. & Rem.Code Ann. § 123.002 (Vernon 2005); Tex. Gov't Code Ann. § 311.005(2) (Vernon 2005). This same definition of "person" was applied in *City of Kerrville*, 803 S.W.2d at 382–83. *See also Tex. Dept. of Health v. Doe*, 994 S.W.2d 890, 893 (Tex.App.-Austin 1999, pet. dism'd).[8]

---

**6.** Plaintiff asserts the handbook that existed during his employment did not contain such a provision, and that he never signed an acknowledgment of same. (Dkt. # 7).

**7.** A telephone conversation is a "wire communication" under the Act. *Forsyth v. Barr*, 19 F.3d 1527, 1534 (5th Cir.1994). "Interception" is the contemporaneous acquisition of the communication through the use of a device. *Id.* at 1535. "The substantive and procedural requirements for authorization to intercept electronic communications are quite different from those for accessing stored elec-

tronic communications." *Steve Jackson Games, Inc.*, 36 F.3d at 463.

**8.** *But see City of Midlothian v. Black*, 271 S.W.3d 791, 796–98 (Tex.App.-Waco 2008), in which the City was sued under the Water Code. The appellate court found that the definition of "person" was not a clear waiver of immunity. *Id.* In this case, Bexar Met has alleged that it is entitled to immunity, but it has not shown that the act giving rise to potential liability can be characterized as a governmental function, as opposed to a private or proprietary function.

Defendants have simply not provided sufficient legal arguments to warrant dismissal of either the federal or state wiretap causes of action under rule 12(b). It is therefore ORDERED that Defendants' motions for dismiss are DENIED without prejudice to raising such arguments at the summary judgment stage after the parties have had an opportunity to conduct discovery and more fully brief their legal arguments.