**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3360
_____

MARIO J. DIANA

v.

WILLIARD OLIPHANT;
CARMEN R. ALTAVILLA,
                              Appellants
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 05-cv-02338)
District Judge:  Honorable A. Richard Caputo
_____

Argued:  January 11, 2011
_____

Before: BARRY, VANASKIE and COWEN, Circuit Judges[*]

(Opinion Filed: August 2, 2011)
_____

OPINION
_____

---

[*] The Honorable Anthony J. Scirica recused following oral argument; the panel was reconstituted to include the Honorable Robert E. Cowen.

Joanna N. Reynolds, Esq. (Argued)
Keli M. Neary, Esq.
Office of Chief Counsel
1800 Elmerton Avenue
Harrisburg, PA 17110

Counsel for Appellants

Bart W. Holmes, Esq. (Argued)
Owens Barcavage & McInroy
2595 Interstate Drive
Suite 101
Harrisburg, PA 17110

Don A. Bailey, Esq.
4311 North 6th Street
Harrisburg, PA 17110

Counsel for Appellee

BARRY, Circuit Judge

Lieutenant Willard Oliphant and Captain Carmen Altavilla, both of the

Pennsylvania State Police, appeal from a post-trial order of the District Court denying

their motion for judgment as a matter of law or for a new trial, and from an order

awarding attorneys' fees to Pennsylvania State Police Trooper Mario Diana, the plaintiff

in the action. For the reasons below, we will vacate the Court's order denying the motion

for judgment as a matter of law and the Court's order on the motion for attorneys' fees,

2

and will remand for the entry of an order granting appellants' motion for judgment as a matter of law on all counts, and denying appellee's motion for attorneys' fees.

I.

Because we write primarily for the benefit of the parties, we will only briefly summarize the history of this case. In January 2003, appellee Diana went on leave from his position as a State Trooper due to a work-related injury. On November 14, 2003, appellant Altavilla, Diana's commander, had Diana served with a return-to-work notice identifying November 22, 2003 as the return date. The order stated that the Pennsylvania State Police would seek to suspend his benefits unless he returned to work, and Diana was instructed to call Altavilla. When Diana called, he stated that he was still injured. Diana testified that Altavilla said that he did not have to return to work unless Altavilla told him to do so, though Altavilla's testimony conflicts with Diana's recollection. In either case, on November 21, 2003, the day before his scheduled return date, Diana called the police barracks to speak with Altavilla, who was out that day. Informed of Diana's call, Altavilla asked appellant Oliphant, who was on duty, to return Diana's call using one of the recorded lines in the barracks. Altavilla testified that he asked Oliphant to use a recorded line because he wanted to protect Oliphant from potential problems that could arise over Diana's interpretation of the call. Oliphant called Diana and told him that he must return to work.

The recorded telephone lines at the police barracks were set to emit a repeating beep that could be heard by both parties on the call. Diana testified that he did not hear any beeps and that he was unaware that the call was being recorded. The recording of the call, played at trial, contains audible beeps occurring at approximately 17-second intervals. Diana suggested at trial—based only on his own say-so—that it was possible to alter the "beep-box" equipment so that it could not be heard by the party receiving the call.

Through a co-worker in the barracks, Diana became aware that his call had been recorded, and that Oliphant had requested that a copy of the recording be preserved. Diana stated that he became depressed, lost weight, and had marital troubles because of his anxiety upon finding out that the call had been recorded.

Diana filed a complaint on November 11, 2005, alleging that the recording of the call without his knowledge violated his First, Fourth, and Fourteenth Amendment rights under the U.S. Constitution, the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. § 2510 *et seq.* ("Title III"), and Pennsylvania's Wiretapping and Electronic Surveillance Control Act, 18 Pa. Cons. Stat. § 5701 *et seq.* ("Pennsylvania Wiretap Act"). Following motion practice that resulted in the dismissal of some of Diana's claims, the case proceeded to trial in April 2008 on the First and Fourth Amendment claims and the Title III and Pennsylvania Wiretap Act claims. At the close of Diana's case, and again at the

4

close of their case, Altavilla and Oliphant moved for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure. The Court dismissed the First Amendment claim but allowed the remaining claims to go to the jury. The jury found in Diana's favor on all three claims against both defendants, awarding Diana a total of $262,126 in compensatory damages and $238,878 in punitive damages. The Court also awarded $20,000 in statutory damages.

Following trial, defendants renewed their motion for judgment as a matter of law, a new trial, and, in the alternative, moved for remittitur. On February 13, 2009, the District Court denied defendants' motion for judgment as a matter of law and for a new trial, but granted the motion for remittitur and reduced the total compensatory and statutory damages to $50,000 and $10,000, respectively. The Court rejected defendants' motion to reduce the punitive damages. On August 6, 2009, the Court awarded Diana $62,283.07 in attorneys' fees.

## II.

We have jurisdiction under 28 U.S.C. § 1291. "We exercise plenary review over the District Court's denial of judgment as a matter of law." *Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 433 (3d Cir. 2009). We apply the same standard as the District Court, which is whether, after "viewing the evidence in the light most favorable to the nonmovant and giving it the advantage of every fair and reasonable inference, there is

5

insufficient evidence from which a jury reasonably could find liability." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir. 1993). "Although judgment as a matter of law should be granted sparingly, we will grant it where the record is critically deficient of the minimum quantum of evidence in support of the verdict." *Eshelman*, 554 F.3d at 433 (citation and internal quotation marks omitted). However, "we must refrain from weighing the evidence, determining the credibility of witnesses, or substituting our own version of the facts for that of the jury." *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007).

A.

Appellants argue that they are entitled to qualified immunity on the Fourth Amendment and Title III claims. They contend that the District Court erred in allowing those claims to go to the jury because they reasonably believed they were protected by an exception within Title III for "an investigative or law enforcement officer in the ordinary course of his duties." 18 U.S.C. § 2510(5)(a)(ii). On the Fourth Amendment claim, they argue that since they reasonably relied on the Title III "ordinary course" exception when recording the call, they reasonably believed that they were acting within an exception to the Fourth Amendment's ban on warrantless searches and seizures. The Court rejected this argument outright because § 2510(5)(a)(ii) "is not an exception under the Fourth Amendment itself," and "[a] recording exempted under § 2510(5)(a)(ii[]) is still subject to

6

the constraints of the Fourth Amendment." App. at 10. The Court rejected appellants'
claim of qualified immunity on the Title III claim because it found that the argument was
not raised in the Rule 50(a) motion.

i.

"The doctrine of qualified immunity protects government officials from liability
for civil damages insofar as their conduct does not violate clearly established statutory or
constitutional rights of which a reasonable person would have known." *Pearson v.
Callahan*, 555 U.S. 223, 231 (2009) (citation and internal quotations omitted). The
Supreme Court has established a two-part analysis that governs whether a government
official is entitled to qualified immunity. *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080
(2011). The first question is whether the official's conduct violated a constitutional or
federal right. In examining this question we look at whether the official's actions were
"reasonable in light of the facts and circumstances available to the officer at the time."
*Curley v. Klem*, 499 F.3d 199, 207 (3d Cir. 2007). We review the official's actions from
the perspective of an objectively reasonable law enforcement officer under the
circumstances, "rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490
U.S. 386, 396 (1989). The second question is whether the right at issue was "clearly
established." *al-Kidd*, 131 S. Ct. at 2080. To be clearly established, "[t]he contours of
the right must be sufficiently clear that a reasonable official would understand that what

7

he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). If "the officer made a reasonable mistake about the legal constraints on his actions," then qualified immunity should protect him or her from suit. *Curley*, 499 F.3d at 207. The two questions in the qualified immunity analysis need not be addressed in sequence. *Pearson*, 555 U.S. at 236.

We disagree with the District Court's conclusion that appellants were not entitled to qualified immunity on the Fourth Amendment claim. The law was not clearly established that they could not rely on the "ordinary course" exception in Title III to protect them from liability under the Fourth Amendment.

As an initial matter, the law in 2003 was not clearly established that the ordinary course exception in Title III did not apply to the officers' actions in recording an administrative phone call to another officer. If anything, the disparate results of the leading circuit court cases established that the question was unsettled and extremely fact specific. *See Adams v. City of Battle Creek*, 250 F.3d 980, 984 (6th Cir. 2001) (ordinary course exception did not apply to surreptitious retrieval of messages from police officer's pager because the practice was not routine, indiscriminate, and well known by pager users); *Abraham v. Cnty. of Greenville, S.C.*, 237 F.3d 386, 389-90 (4th Cir. 2001) (ordinary course exception did not apply to recording of judges' telephone calls because the county did not have an established policy of monitoring such calls, and it recorded the

8

calls only by mistake); *First v. Stark Cnty. Bd. of Comm'rs*, No. 99-3547, 2000 WL 1478389, at \*3-4 (6th Cir. Oct. 4, 2000) (ordinary course exception applied to act of recording all conversations on open microphones in police dispatch center because the system recorded conversations indiscriminately and the system was used in the ordinary course of the police department's duties); *Amati v. City of Woodstock*, 176 F.3d 952, 955 (7th Cir. 1999) (ordinary course exception could apply to act of recording all calls off of a previously unrecorded police line because the term "ordinary" "is [] reasonably interpreted to refer to routine noninvestigative recording of telephone conversations . . . . To record all calls to and from a police department is . . . a routine police practice"). We also note that our Court had provided no guidance on this issue at the time of Oliphant's call, which further suggests that a reasonable officer in appellants' position would not have known that he or she was violating clearly established law in calling another officer on a recorded police line.

Second, the District Court erred to the extent that it determined that no reasonable officer could believe that an exception to liability under Title III could also function as an exception to Fourth Amendment liability. Congress enacted Title III "[l]argely in response" to two decisions of the Supreme Court that found Fourth Amendment violations in police wiretap activities. *See Bartnicki v. Vopper*, 532 U.S. 514, 523 (2001) (referencing *Berger v. New York*, 388 U.S. 41 (1967), and *Katz v. United States*, 389 U.S.

9

347 (1967)).  One of Title III's purposes was to "authoriz[e] and regulat[e] electronic surveillance for law enforcement purposes."  *Id.*  It was not clearly established in 2003 that Congress intended to provide law enforcement officers with a statutory exception to liability while still holding officers liable under the Fourth Amendment for the same behavior.  *See, e.g., Walden v. City of Providence, R.I.*, 596 F.3d 38, 54 (1st Cir. 2010) ("If under Title III law the defendants could have concluded their actions were not illegal, then they could reasonably have concluded it was not clearly established that the same actions would violate the Constitution.  Congress enacted Title III in response to *Katz*, and in doing so attempted to provide at least as much protection as the Constitution affords." (internal citation omitted)).  We cannot say that it was sufficiently clear to a reasonable officer that he could be liable for a Fourth Amendment violation when he reasonably believed he was protected under Title III.  *See al-Kidd*, 131 S. Ct. at 2083 ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.").

Accordingly, appellants were entitled to qualified immunity on Diana's Fourth Amendment claim because they were entitled to qualified immunity on the Title III claim.

ii.

The District Court refused to consider appellants' argument that they were entitled to qualified immunity on the Title III claim because it determined that they had not raised

10

the issue in their Rule 50(a) motion for judgment as a matter of law. The Court's determination was erroneous; the transcript of the argument reflects that qualified immunity had been raised as to both the Fourth Amendment and Title III claims. App. at 631-35. Appellants argued that because they were entitled to qualified immunity on the Title III claim, they also were entitled to qualified immunity on the Fourth Amendment claim. *Id.* at 632 ("[T]he officers would have reasonably believed that they were acting in the ordinary course of their duties. If they were acting in the ordinary course of their duties they would have to be on notice through some binding case law that they were wrong in believing they were acting in the ordinary course of their duties."), 635 ("In this particular instance they have a right to rely on an exception to the Federal Wiretap Act, because the privacy right is inextricably linked with that. And what I'm arguing is basically qualified immunity, and I think they are two separate things.").

Appellants' arguments regarding qualified immunity for the Fourth Amendment claim necessarily relied on the District Court also accepting that they were entitled to qualified immunity on the Title III claim or that they actually qualified for the ordinary course exception in Title III. Because appellants had raised the Title III qualified immunity argument, the Court erred in rejecting it as waived. For the reasons discussed above, appellants were entitled to qualified immunity on the federal statutory claim

because it was not "beyond debate" that their actions did not fall into the ordinary course exception. *al-Kidd*, 131 S. Ct. at 2083.

B.

Appellants argue that their actions constitute an exception to liability under the Pennsylvania Wiretap Act, and thus that they are entitled to judgment as a matter of law on that claim.[1] Section 5704(3) of the act, a provision relevant to law enforcement personnel, states:

> It shall not be unlawful and no prior court approval shall be required under this chapter for:
>
> . . .
>
> (3) Police and emergency communications systems to record telephone communications coming into and going out of the communications system of the Pennsylvania Emergency Management Agency or a police department, fire department or county emergency center, if:
>
> (i) the telephones thereof are limited to the exclusive use of the communication system for administrative purposes and provided the communication system employs a periodic warning which indicates to the parties to the conversation that the call is being recorded;
>
> (ii) all recordings made pursuant to this clause, all notes made therefrom, and all transcriptions thereof may be destroyed at any time, unless required with regard to a pending matter; and

---

[1] The defense of sovereign immunity is not available under the Pennsylvania Wiretap Act. 18 Pa. Cons. Stat. § 5725(b).

(iii) at least one nonrecorded telephone line is made available for public use at the Pennsylvania Emergency Management Agency and at each police department, fire department or county emergency center.

18 Pa. Cons. Stat. § 5704.

The District Court did not reach the applicability of this defense because it found that appellants did not advance the argument in the pre-verdict Rule 50(a) motion. We will address this argument on appeal because it was preserved at the summary judgment stage. *Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1338 n.12 (8th Cir. 1997); *Ruyle v. Cont'l Oil Co.*, 44 F.3d 837, 841 (10th Cir. 1994) ("A party who properly raises an issue of law before the case goes to the jury need not include the issue in a motion for a directed verdict in order to preserve the question on appeal." (citation and internal quotation marks omitted)).

We find that even viewing the evidence in the light most favorable to Diana, the evidence demonstrated as a matter of law that appellants' actions were covered by the exception to liability at § 5704(3). First, Oliphant's call to Diana met the requirements of § 5704(3)(i): the phone call was for administrative purposes—to tell Diana that he had to return to work—and the telephone system contained audible periodic warning beeps. Any evidence suggesting that the Pennsylvania State Police removed the beep warnings so the police could surreptitiously record Diana is unsupported by anything other than Diana's speculation. Second, it is undisputed that the recording of the phone conversation could

13

be destroyed at any time, satisfying the requirement of § 5704(3)(ii).  Finally, it is undisputed that there were nonrecorded telephone lines available at the police barracks, satisfying the requirement of § 5704(3)(iii).  Appellants were entitled to judgment as a matter of law on the Pennsylvania Wiretap Act claims.

## III.

Because we find that appellants were entitled to qualified immunity on the Fourth Amendment and Title III claims, and to judgment as a matter of law on the Pennsylvania Wiretap Act claims, we need not address appellants' remaining arguments.  For the reasons previously stated, we will vacate the February 13, 2009 and August 6, 2009 orders of the District Court and remand for entry of an order granting appellants' motion for judgment as a matter of law on all counts and denying Diana's motion for attorneys' fees.