In the

# United States Court of Appeals

### For the Seventh Circuit

No. 13-1045

DEBRA SEITZ and GREG WELTER,

*Plaintiffs-Appellants*,

*v.*

CITY OF ELGIN,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 11-cv-4803—**Joan Humphrey Lefkow**, *Judge*.

ARGUED JUNE 4, 2013—DECIDED JUNE 24, 2013

Before FLAUM, SYKES, and HAMILTON, *Circuit Judges*.

FLAUM, *Circuit Judge.* Plaintiffs-appellants Debra Seitz, a real estate professional, and Greg Welter, then an Elgin police officer, found themselves in trouble after the City of Elgin ("City") learned about Greg's use of police databases to further the interests of a real estate management company that he partially owned. The City learned of Greg's actions when it received print-outs of email traffic between Greg and Seitz. The two sued

Greg's then-wife Tamara and another individual for accessing Greg's email account without authorization and disclosing the emails to the City. They also sued the City for its use of the emails. The district court dismissed the complaint against the City, finding no basis for municipal liability under the applicable statute. We affirm.

## I. Background

### A. Factual Background

Debra Seitz and Greg Welter are partners who own in part Wasco Investment Corp., a property management company.[1] Although the partnership totals six, Seitz and Greg run the company's day-to-day operations. Greg, at the time, was also a police officer with the City. To facilitate Wasco's operations, both Seitz and Greg created Yahoo! email accounts.

In August 2010, a City employee approached Seitz with copies of emails that she and Greg had exchanged using the email accounts. The emails showed that Greg had used the Law Enforcement Agencies Data System ("LEADS") to research cars parked in front of Wasco properties. Illinois, however, limits use of LEADS to criminal justice purposes. *See* Ill. Admin. Code tit. 20, § 1240.80(a), (d). A few days later, Elgin's police chief confronted Greg with the emails and notified him of a

---

[1] Because this appeal arises from an order on a motion to dismiss, we report the facts as alleged in plaintiffs' verified second amended complaint.

coming misconduct investigation regarding his use of LEADS.

The City officials had obtained the emails through an anonymous letter sent to Elgin's corporation counsel. Tamara, a fellow Elgin police officer, and Robert Beeter were allegedly behind that letter. They accessed Greg's email account, read through emails stored on that account, printed the emails at the heart of this litigation, and conveyed those print-outs to the corporation counsel under cover of anonymity.

Greg and Seitz sued Tamara and Beeter, alleging violations of the Federal Wiretap Act (FWA), the Stored Communications Act (SCA), and the Computer Fraud and Abuse Act, in addition to state law claims. Plaintiffs also sued Elgin under the FWA.

## B. Procedural Background

The City moved to dismiss the count against it on three grounds. First, it argued that the FWA does not authorize a cause of action against municipalities. Second, the City claimed plaintiffs did not adequately allege a "contemporaneous" interception as required by the FWA. Finally, the City argued that plaintiffs did not allege the City knew the emails had been intercepted as the term is defined in the FWA.

Reaching only the first grounds for dismissal, the district court concluded that *Abbott v. Village of Winthrop Harbor*, 205 F.3d 976 (7th Cir. 2000), controlled: because the FWA prohibited "persons" from intercepting communications and did not extend its definition of "person"

to municipalities, the FWA authorized no cause of action against municipalities. *Abbott*, 205 F.3d at 980. The district court granted the motion to dismiss on those grounds without reaching the sufficiency of plaintiffs' pleadings.

## II. Discussion

We review de novo a district court's ruling on a motion to dismiss, accepting as true all factual assertions in the complaint. *Stayart v. Google Inc.*, 710 F.3d 719, 722 (7th Cir. 2013). The FWA confers a civil cause of action on "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter." 18 U.S.C. § 2520(a). The aggrieved party may sue "the person or entity, other than the United States, which engaged in that violation." *Id*. The statute did not always read this way, however. Initially, it authorized recovery only against "the person" who violated the FWA.[2] *Abbott*, 205 F.3d at 980. In 1986, however, Congress extended the cause of action from against any "person" to against any "person or entity" who committed the violation. Electronic Communications Privacy Act of 1986, Pub. L. No. 99-508, § 103, 100 Stat. 1848, 1853-54. It did so without significant comment in the legislative history. *See*

---

[2] The prior statute read: "Any person whose wire or oral communication is intercepted, disclosed, or used in violation of this chapter shall (1) have a civil cause of action against any person who intercepts, discloses, or uses or procures any other person to intercept, disclose, or use such communications . . . ." 18 U.S.C. § 2520(a) (1982).

*Amati v. City of Woodstock*, 829 F. Supp. 998, 1003 (N.D. Ill. 1993). Finally, in 2001, the PATRIOT Act amended the statute again, yielding the current wording that extends liability to a "person or entity, other than the United States." USA PATRIOT Act of 2001, Pub. L. No. 107-56, § 223(a)(1), 115 Stat. 272, 293.

Importantly, the FWA also defines "person." A person is "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation." 18 U.S.C. § 2510(6). The plain text of that definition—which has remained unchanged since passage of the original act in 1968—does not extend to government units. Instead, it reaches only employees or agents of a government. The Senate Report accompanying the original bill confirmed this meaning: "The definition explicitly includes any officer or employee of the United States or any State or political subdivision of a State. . . . Only the governmental units themselves are excluded. . . . Otherwise the definition is intended to be comprehensive." *Amati*, 829 F. Supp. at 1001 (quoting S. Rep. No. 90-1097 (1968), *reprinted in* 1968 U.S.C.C.A.N. 2112, 2179)). Thus, as originally composed in 1968, the FWA created a cause of action only against "persons" and then excluded municipalities from the definition of "persons." It created no cause of action against municipalities or any other governmental unit.[3]

---

[3] Plaintiffs argue for the first time in their reply brief that the City is vicariously liable even under the original definition of

(continued...)

Plaintiffs argue, however, that inclusion of the word "entity" in the 1986 amendments brought municipalities within the scope of § 2520. Because the definition of "person" already included "partnership[s], association[s], joint stock compan[ies], trust[s], or corporation[s]," they advance, the word "entity" must reach government units. Plaintiffs are right: The plain meaning of "entity" includes government units. *Black's Law Dictionary* 477 (5th ed. 1979) ("Entity includes person, estate, trust, governmental unit."). And if "entity" referred only to business or non-profit corporations and associations, the 1986 amend-

---

[3] (...continued)

person. Because that definition includes "any employee, or agent of . . . any State or political subdivision" and because a municipality may only act through its employees or agents, plaintiffs argue an employee's or agent's violation of the FWA renders the municipality vicariously liable. First, plaintiffs have waived this argument by raising it only in their reply brief. *See Bracey v. Grondin*, 712 F.3d 1012 (7th Cir. 2013). Second, plaintiffs offer no argument or authority establishing municipalities as "political subdivisions" of the state under the FWA (a question we leave open in this opinion). But even assuming no such deficiencies, this argument nevertheless falls short. *Monell v. Department of Social Services* declined to impose vicarious liability on municipalities under § 1983 when neither the text nor the legislative history of the statute offered any support for doing so. 436 U.S. 658, 691 (1978). So too here. The statutory text and the legislative history from the original 1968 enactment of the FWA both underscore that § 2520 did not impose liability on "governmental units," either directly or under a theory of vicarious liability.

ments would add nothing to the statute because the definition of "person" already included such organizations. We must give effect to each word when interpreting statutes, *see Damato v. Hermanson*, 153 F.3d 464, 470 (7th Cir. 1998) ("Statutes must be interpreted, if possible, to give each word some operative effect." (quoting *Walters v. Metro. Educ. Enters.*, 519 U.S. 202, 209 (1997)), and defining "entity" to reach only organizations already defined as "persons" would render "entity" superfluous. The subsequent amendment of § 2520 by the PATRIOT Act—to add the phrase "other than the United States" as a modifier to "person or entity"—only underscores that something in the phrase "person or entity" encompasses government units. If not, then no need existed for the PATRIOT Act's qualifier.

Following this chain of reasoning, other courts have found municipalities amenable to suit under § 2520. *See, e.g.*, *Adams v. City of Battle Creek*, 250 F.3d 980, 985 (6th Cir. 2001) ("The addition of the words 'entity' can only mean a governmental entity because prior to the 1986 amendments, the definition of 'person' already included business entities. In order for the term not to be superfluous, the term 'entity' necessarily means governmental entities."); *Garza v. Bexar Metro. Water Dist.*, 639 F. Supp. 2d 770, 774 (W.D. Tex. 2009) ("There would have been no reason for Congress to carve out an exception for the United States if governmental entities could not be sued under the statute."); *Williams v. City of Tulsa*, 393 F. Supp. 2d 1124, 1132-33 (N.D. Okla. 2005) ("Congress' subsequent amendment in 2001 to exclude the United States from entities that could be liable evidences a Congressional under-

standing that the 1986 amendment created governmental liability."); *Conner v. Tate*, 130 F. Supp. 2d 1370, 1374-75 (N.D. Ga. 2001); *Dorris v. Absher*, 959 F. Supp. 813, 820 (M.D. Tenn. 1997), *rev'd in part on other grounds*, 179 F. 3d 420 (6th Cir. 1999); *PBA Local No. 38 v. Woodbridge Police Dep't*, 832 F. Supp. 808, 823 (D.N.J. 1993); *see also Organizacion JD LTDA v. U.S. Dep't of Justice*, 18 F.3d 91, 94-95 (2d Cir. 1994) (using same analysis to find governmental units amenable to suit as a "person or entity" under § 2707).

Although we agree with plaintiffs that "entity" as used in § 2520 includes government units, plaintiffs nevertheless have no cause of action against the City for the specific FWA violations alleged here. Section 2520 itself creates no substantive rights. Rather, it simply provides a cause of action to vindicate rights identified in other portions of the FWA, specifically communications "intercepted, disclosed, or intentionally used *in violation of this chapter*." § 2520(a) (emphasis added). In this sense, § 2520 is like 42 U.S.C. § 1983. *See Levin v. Madigan*, 692 F.3d 607, 611 (7th Cir. 2012) ("Section 1983 does not create substantive rights, but operates as a means for vindicating federal rights conferred elsewhere." (citation omitted)). Thus, we must look to the scope and nature of the specific substantive right plaintiffs accuse defendants of violating to determine whether plaintiffs may assert that right against a municipality.

Here, plaintiffs accuse the City of violating § 2511(1)(c)-(d), which prohibits "any person" from intentionally disclosing or using communications intercepted in viola-

tion of the FWA. 18 U.S.C. § 2511(1)(c)-(d). Thus, § 2511(1) protects only against actions taken by a "person" as defined in the statute, which does not include municipalities. *See* § 2510(6); *Abbott*, 205 F.3d at 980. Only a "person" can violate § 2511(1). And because § 2520 creates a cause of action only for "violation[s] of" the FWA, it necessarily follows that § 2520 confers a cause of action to enforce § 2511(1) only against persons as defined by the statute.[4] We therefore reaffirm the conclusion of *Abbott*: even though "entity" includes government units, § 2520 pro-

---

[4] Here again, § 1983 provides a helpful analogue. In considering whether someone may vindicate a particular statutory right using § 1983, we ask whether the statute confers a right on "identifiable persons," *see McCready v. White*, 417 F.3d 700, 703 (7th Cir. 2005), and whether the putative plaintiff is a member of that class of identifiable persons, *see Planned Parenthood v. Comm'r of Ind. State Dep't of Health*, 699 F.3d 962, 973 (7th Cir. 2012). Section 2511(1) no doubt confers rights on identifiable persons, but it limits that group only to individuals aggrieved by a "person" as defined in § 2510(6). Thus, an individual whose communications are intercepted or used by someone else—like plaintiffs' claim against the City in this case—is not an "identifiable person" who enjoys the statutory right conferred by § 2511(1) and made actionable by § 2520(a). In other words, an individual whose communications are intercepted or used by someone other than a § 2510(6) person is not an intended beneficiary of the statute and can have no cause of action under § 2520. *Cf. Marie O. v. Edgar*, 131 F.3d 610, 619 (7th Cir. 1997) (requiring courts to consider whether "plaintiff is an intended beneficiary of the statute" when deciding whether statute creates a right enforceable through § 1983).

vides no cause of action against a municipality for viola-
tions of § 2511(1) because nothing in the 1986 amend-
ments altered the scope of the substantive violation by
expanding it beyond "persons" as defined in the FWA.
Plaintiff's suggestion that the PATRIOT Act created such
a cause fails for the same reason: Like the 1986 amend-
ments, the PATRIOT Act amendments made no change
to the scope of § 2511(1).[5] That provision continues to
apply only to a "person."

This reading of the statute, however, gives meaning to
each word of § 2520 only if the FWA somewhere else
creates a substantive right against an "entity." It does.
Section 2511(3)(a)—added by the same 1986 law that
inserted "or entity" into § 2520—prohibits "a person *or
entity* providing an electronic communication service to
the public [from] intentionally divulg[ing] the contents of
any communication . . . while in transmission on that
service to any person or entity other than an addressee
or intended recipient of such communication." *See*
§ 2511(3)(a) (emphasis added); *see also* Pub. L. No. 99-508,
§ 102, 100 Stat. at 1853. Thus, § 2511(3)(a) creates a sub-
stantive right enforceable against an entity.[6] Because the

---

[5]  This assumes, of course, that Congress could even create a
cause of action that did not previously exist solely through
language that does nothing more than identify an exception.
We find that assumption questionable.

[6]  For the reasons above, we believe this use of "entity" includes
government units. Apparently, municipal governments have,
in fact, entered or attempted to enter the telecommunications

(continued...)

1986 amendments added § 2511(3), they also had to alter § 2520 to match the "person or entity" language used in § 2511(3). *See Amati*, 829 F. Supp. at 1002-03. Without that change, parties could sue a "person" who violated § 2511(3)(a) but not an entity even though § 2511(3) explicitly referenced both.[7] Thus, excluding governmental units from liability for violations of § 2511(1) does not, as *Adams* suggested, read "entity" out of the statute.

Adams (and the district courts following it) did not consider that § 2520 creates no substantive rights and did not consider whether other parts of the FWA created

---

[6] (...continued)

business. *See Nixon v. Mo. Mun. League*, 541 U.S. 125 (2004) (describing Missouri municipalities challenging state law prohibiting governmental entry into telecom market); *City of Abilene v. FCC*, 164 F.3d 49 (5th Cir. 1999) (Texas municipality challenging state law prohibiting governmental entry into the telecom market); *see also* Brandon Doutre & Dan Haugen, *Iowa Has Several Examples of Municipal Telecom Companies*, Waterloo Cedar Falls Courier (June 26, 2005), http://wcfcourier.com/news/regional/iowa-has-several-examples-of-municipal-telecom-companies/article_45dd46be-a045-5e21-a5b9-c16f9e943734.html (last accessed on June 5, 2013).

[7] Section 2511(3) harbors other differences from subsection (1) that further distinguish between the two provisions. Unlike subsection (1), which metes out criminal punishment on its violators, subsection (3) imposes no criminal sanction. This difference further suggests Congress made a deliberate choice to subject only "persons" to the requirements of § 2511(1) but to extend § 2511(3) to any "person or entity."

substantive rights enforceable against an entity. Those cases simply ended the inquiry with the conclusion that governmental units are "entities" under § 2520 and therefore were amenable to suit for all violations of the FWA. In doing so, *Adams* relied heavily on the legislative history of another, closely-related statute: the Stored Communications Act, 18 U.S.C. § 2707. The same 1986 law that added "or entity" to § 2520 also created the SCA in its entirety. Pub. L. No. 99-508, § 201, 100 Stat. at 1860-68. And § 2707, which creates a private cause of action for violations of the SCA, uses language similar to § 2520: "any . . . person aggrieved by any violation of this chapter in which the conduct constituting the violation is engaged in with a knowing or intentional state of mind may, in a civil action, recover from the person or entity, other than the United States, which engaged in that violation." § 2707(a). Thus, § 2707 deploys the same "person or entity" language used in § 2520 (and, like § 2520, the PATRIOT Act later amended § 2707 to exempt the United States). The Senate Report accompanying § 2707 makes clear that "entity" includes governmental units. Under § 2707(a), anyone "aggrieved by any violation of this new chapter may recover from any person or entity—including governmental entities—who knowingly or intentionally violated this chapter." *Anderson v. City of Columbus*, 374 F. Supp. 2d 1240, 1245 (M.D. Ga. 2005) (quoting S. Rep. No. 99-541, at 43 (1986), *reprinted in* 1986 U.S.C.C.A.N. 3355, 3597); *accord Adams*, 250 F.3d at 985.

But like § 2520, § 2707 does not itself create any substantive rights. Rather, it confers a private cause of action for violations defined elsewhere in the SCA. And unlike

§ 2511(1), which creates a substantive right only against a "person," the relevant substantive provision of the SCA speaks in much broader terms: "*[W]hoever* (1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished . . . ." § 2701(a) (emphasis added). Thus, *Adams* inappropriately consulted the legislative history of a statute that does not truly parallel the FWA. The legislative history suggesting a cause of action against governmental units thus reflects not just the use of "person or entity" in § 2707—as *Adams* emphasized—but also the broader substantive right created by § 2701—which *Adams* ignored. Section 2707 and its legislative history therefore offer little help in determining the scope and breadth of the substantive right created by § 2511(1). On that question, the text of the FWA is clear. The substantive rights that plaintiffs allege apply only against a "person," which does not include a municipality.

Finally, had Congress hoped to expand liability under the FWA to include governmental units, it surely could have done so with more clarity. For example, Congress could have amended the substantive statute itself, incorporating the same "person or entity" language used in § 2520 and § 2707 or the "whoever" language found in § 2701. It could have amended the definition of "person" in § 2510(6)—which applies to both the FWA and the SCA—to include governmental units. Or it could have deleted the definition of "person" altogether, thereby

reverting to the general definition of "person" in 1 U.S.C. § 1, which encompasses municipalities. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 688-89 (1978). At a minimum, we would expect some mention of this dramatic expansion of municipal liability in the legislative history. *See Abbott*, 205 F.3d at 980.

To sum up, the 1986 amendment permits suit against governmental units through the addition of "entity" to the statutory text. But it does so only for substantive provisions that identify an "entity" as a potential violator of that provision. Any conclusion otherwise ignores at least some part of the statutory text. If "entity" does not extend to government units, it adds nothing to the statute. And if we subject governmental units to suit for violations of § 2511(1), we ignore the statute's use of "person" rather than "person or entity." Our interpretation avoids both of these pitfalls, giving due weight to the addition of "entity" while remaining faithful to the plain text of § 2511(1).

### III. Conclusion

For these reasons, we AFFIRM the district court's dismissal of plaintiffs' complaint and confirm the continued validity of *Abbott* in this circuit. As this conclusion disposes of all claims raised against the City, we have no need to consider the sufficiency of plaintiffs' complaint and do not address the City's other grounds for affirming the district court's decision.