In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 13-3147

DAVID CAMPBELL,

*Plaintiff-Appellant*,

*v.*

FOREST PRESERVE DISTRICT OF
COOK COUNTY, ILLINOIS,

*Defendant-Appellee*.

———————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:13-cv-00845 — **Thomas M. Durkin**, *Judge*.

———————

ARGUED APRIL 8, 2014 — DECIDED MAY 15, 2014

———————

Before POSNER and TINDER, *Circuit Judges*, and LAWRENCE,
*District Judge*.*

TINDER, *Circuit Judge*. David Campbell appeals the dismissal of a race-discrimination claim he brought against his former employer, the Forest Preserve District of Cook Coun-

———————

* Of the Southern District of Indiana, sitting by designation.

ty (FPD), under 42 U.S.C. § 1981. The district court dismissed his claim on the ground that § 1981 does not create a private right of action against state actors. We agree; therefore, we affirm.

## I.    BACKGROUND

Campbell formerly worked as a laborer at the Cermak Family Aquatic Center in Lyons, Illinois, a facility operated by the FPD. In September 2010, however, a security camera recorded him having sex with a coworker in the office of the Aquatic Center. A few weeks later, the FPD fired him. In February 2013, nearly two and a half years later, Campbell sued the FPD in the U.S. District Court for the Northern District of Illinois.

In his original complaint, Campbell brought two constitutional claims under 42 U.S.C. § 1983 and one statutory claim under 42 U.S.C. § 1981. His § 1983 claims alleged that he was denied progressive discipline in violation of his right to due process and that he was fired because of his race in violation of his right to equal protection of the laws. His § 1981 claim alleged that his termination violated that statute's prohibition on racial discrimination in the making and enforcement of contracts.

The FPD moved for summary judgment on Campbell's § 1983 claims, arguing that they were time-barred because they were governed by Illinois's two-year statute of limitations for personal-injury torts. The FPD also argued that Campbell's § 1981 claim was barred by the same statute of limitations, given the Supreme Court's holding that § 1983 "provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is

pressed against a state actor." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989). Apparently conceding that his § 1983 claims were time-barred, but believing that his § 1981 claim was not, Campbell sought leave to amend his complaint to bring a single claim under § 1981, and the district court allowed him to do so.

The FPD moved to dismiss Campbell's amended complaint, reasserting its argument that under *Jett*, § 1983 provides the exclusive remedy for violations of § 1981 committed by state actors. The district court agreed and dismissed Campbell's § 1981 claim. In addition, although he did not request leave to file a second amended complaint, the district court held that Campbell would not be "permitted to replead under § 1983 because he has already done that once in his original complaint and such a claim would be barred by the statute of limitations."

On appeal, Campbell argues that *Jett* was superseded by the Civil Rights Act of 1991 and that as a result, § 1981 provides a remedy against state actors independent of § 1983. He further argues that if we were to allow his claim to proceed directly under § 1981, it would be timely because it would be governed by 28 U.S.C. § 1658's four-year statute of limitations, rather than the two-year statute of limitations governing § 1983 claims brought in Illinois.

## II.    STANDARD OF REVIEW

"We review de novo a district court's ruling on a motion to dismiss, accepting as true all factual assertions in the complaint." *Seitz v. City of Elgin*, 719 F.3d 654, 655–56 (7th Cir.), *cert. denied*, 134 S.Ct. 692 (2013). Ordinarily, we would review a district court's decision whether to allow a party to

file a second amended complaint for abuse of discretion. *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007). However, in this case, Campbell did not request leave to file a second amended complaint in the district court, nor does he challenge the district court's decision to deny him leave to replead under § 1983. Therefore, we consider only whether the district court correctly dismissed his claim under § 1981.

### III.    DISCUSSION

Under *Jett*, § 1981 itself provides a remedy for violations committed by private actors, but an injured party must resort to § 1983 to obtain relief for violations committed by state actors. 491 U.S. at 731–35. Campbell urges us to hold that the Civil Rights Act of 1991 changed all of that. He wants to bring his claim against the FPD (a state actor) under § 1981 rather than § 1983 because he believes that his claim would be timely under the former but not the latter.

Prior to 1990, Congress had not adopted a statute of limitations for federal claims. Thus, courts were instructed to borrow the most analogous state statutes of limitations, both for § 1983 claims against state actors, *Bd. of Regents of the Univ. of the State of N.Y. v. Tomanio*, 446 U.S. 478, 483–86 (1980), and for § 1981 claims against private actors, *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 462–66 (1975). Later, the Supreme Court clarified that such claims were governed by the forum state's personal-injury statute of limitations. *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660–62 (1987) (§ 1981 claims); *Wilson v. Garcia*, 471 U.S. 261, 276–79 (1985) (§ 1983 claims). In Illinois, that statute of limitations is two years. 735 Ill. Comp. Stat. 5/13-202.

On December 1, 1990, Congress adopted a four-year statute of limitations for federal claims. 28 U.S.C. § 1658. However, this applies only to civil actions "arising under an Act of Congress enacted after the date of the enactment of this section." *Id.* The Supreme Court has interpreted § 1658 to apply only "if the plaintiff's claim against the defendant was made possible by a post-1990 enactment," and to leave "in place the 'borrowed' limitations periods for pre-existing causes of action." *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004).

As discussed more fully below, the Civil Rights Act of 1991 amended § 1981, making possible some new types of claims. In particular, claims based on conduct that occurred after the formation of a contract, such as wrongful-termination claims, were made possible by the addition of § 1981(b); thus, when such a claim is brought against a private employer under § 1981, it is governed by § 1658's four-year statute of limitations. *Id.* at 383. If we were to hold that the Civil Rights Act of 1991 also superseded *Jett* and created a § 1981 remedy against state actors, the same statute of limitations would necessarily apply to wrongful-termination claims brought against public employers, such as the FPD.

In contrast, the only post-1990 amendment to § 1983 came in 1996, when Congress limited the relief available against judicial officers. This did not make possible any new causes of action. Thus, in general, § 1983 actions continue to be governed by the forum state's personal-injury statute of limitations, rather than § 1658's four-year statute of limitations.

This is why Campbell wants to avoid § 1983 and why we must decide whether he can proceed directly under § 1981.

Of course, even if § 1983 provides the exclusive remedy, his claim is still based on a violation of § 1981 that could not have occurred before the Civil Rights Act of 1991 amended that statute. Thus, one might argue that § 1658's four-year statute of limitations should apply regardless. However, Campbell has disavowed any reliance on § 1983; therefore, we express no opinion on that issue, and we turn to whether he may proceed directly under § 1981.

The statute now codified at 42 U.S.C. § 1981 evolved from § 1 of the Civil Rights Act of 1866. *Jones*, 541 U.S. at 372. "It was amended in minor respects in 1870 and recodified in 1874, but its basic coverage did not change prior to 1991." *Id.* (citation omitted). Until then, it provided as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and no other.

42 U.S.C. § 1981 (1988).

By 1976, it was well established that § 1981 prohibits racial discrimination in the making and enforcement of private as well as public contracts. *Runyon v. McCrary*, 427 U.S. 160, 168 (1976). In addition, the Supreme Court had held that "§ 1981 affords a federal remedy against discrimination in

private employment on the basis of race." *Id.* at 172 (quoting *Johnson*, 421 U.S. at 459–60).

However, in the late 1980s, the Court limited the scope of § 1981 in the context of private employment. In *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989), the Court was confronted with the question whether racial harassment in the workplace was actionable under § 1981. In addition, after oral argument, the Court asked the parties to brief the question whether *Runyon*'s interpretation of § 1981 (i.e., that it applies to private contracts) should be reconsidered. *Id.* at 171.

Ultimately, the Court declined to overrule *Runyon*, leaving intact its holding that § 1981 prohibits racial discrimination in the making and enforcement of private contracts. *Id.* at 171–75. However, the Court did so not because it agreed that *Runyon* was correctly decided (it declined to reach that issue), but rather because there was insufficient justification to depart from the doctrine of *stare decisis*. *Id.* at 175 n.1.

Moreover, the Court imposed a significant limitation on the types of discriminatory acts that were prohibited by § 1981, holding that it "covers only conduct at the initial formation of the contract and conduct which impairs the right to enforce contract obligations through legal process." *Id.* at 179. The Court rejected an interpretation of § 1981 that would include "postformation conduct unrelated to an employee's right to enforce his or her contract, such as incidents relating to the conditions of employment." *Id.* at 180. Thus, the Court affirmed the dismissal of Patterson's racial harassment claim as not actionable under § 1981. *Id.* at 189.

A week after the Court decided *Patterson*, it decided *Jett*, 491 U.S. 701, another § 1981 case, but one that arose in the context of public employment. In *Jett*, the Court was tasked with deciding whether § 1981

> provides an independent federal cause of ac-
> tion for damages against local governmental
> entities, and whether that cause of action is
> broader than the damages remedy available
> under 42 U.S.C. § 1983, such that a municipali-
> ty may be held liable for its employees' viola-
> tions of § 1981 under a theory of *respondeat su-
> perior*.

*Id.* at 705. The Court answered both questions in the nega-
tive, holding that § 1983 "provides the exclusive federal
damages remedy for the violation of the rights guaranteed
by § 1981 when the claim is pressed against a state actor,"
and that as a result, a plaintiff "must show that the violation
of his 'right to make contracts' protected by § 1981 was
caused by a custom or policy within the meaning of *Monell*
and subsequent cases." *Id.* at 735–36.

Justice O'Connor, writing for the plurality in *Jett*, first
noted that § 1981 did not expressly create a damages remedy
against state actors. *Id.* at 711–12. She then examined the leg-
islative history of §§ 1981 and 1983 in great detail and con-
cluded that "Congress intended that the explicit remedial
provisions of § 1983 be controlling in the context of damages
actions brought against state actors alleging violation of the
rights declared in § 1981." *Id.* at 731.

The plurality was not dissuaded by the fact that the
Court had previously "read § 1 of the 1866 Act to reach pri-

vate action and … implied a damages remedy to effectuate the declaration of rights contained in that provision," *id.* at 731, noting that it "had little choice but to hold that aggrieved individuals could enforce this prohibition, *for there existed no other remedy to address such violations of the statute*," *id.* at 731–32 (quoting *Cannon v. Univ. of Chi.*, 441 U.S. 677, 728 (1979) (White, J., dissenting)). The plurality reasoned that "whatever the limits of the judicial power to imply or create remedies, it has long been the law that such power should not be exercised in the face of an express decision by Congress concerning the scope of remedies available under a particular statute." *Id.* at 732. Thus, the fact that the Court had inferred a § 1981 remedy against private actors did not authorize it to do so "in the context of the 'state action' portion of § 1981, where Congress has established its own remedial scheme." *Id.* at 731.

Justice Scalia cast the fifth vote needed to affirm in *Jett*, but he only concurred with Justice O'Connor's opinion in part. Specifically, he joined her opinion except "insofar as it relies upon legislative history." *Id.* at 738. And in his short concurrence, he added the following:

> To hold that the more general provisions of 42 U.S.C. § 1981 establish a mode of liability for a particular category of offense by municipalities that is excluded from the closely related statute (42 U.S.C. § 1983) which deals more specifically with that precise category of offense would violate the rudimentary principles of construction that the specific governs the general, and that, where text permits, statutes dealing with

similar subjects should be interpreted harmoniously.

*Id.* at 738–39. Thus, a majority, not merely a plurality, of the Court agreed that to infer a remedy against state actors under § 1981 would contravene the specific remedy created by Congress under § 1983.

A few years after *Patterson* and *Jett* were decided, Congress enacted the Civil Rights Act of 1991, which re-codified the preexisting version of § 1981 as subsection (a) and added subsections (b) and (c). The statute now reads as follows:

(a) Statement of equal rights

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

(b) "Make and enforce contracts" defined

For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

(c) Protection against impairment

> The rights protected by this section are protect-
> ed against impairment by nongovernmental
> discrimination and impairment under color of
> State law.

42 U.S.C. § 1981 (2012). The Supreme Court has recognized
that Congress added subsection (b) "with the design to su-
persede *Patterson*" by expanding the right to "make and en-
force contracts" to include postformation conduct. *CBOCS
W., Inc. v. Humphries*, 553 U.S. 442, 450 (2008). However,
there have been differences of opinion as to what Congress
intended to accomplish through subsection (c). In this case,
Campbell argues that subsection (c) was designed to super-
sede *Jett*.

The Ninth Circuit took this position in *Federation of Afri-
can American Contractors v. City of Oakland*, 96 F.3d 1204 (9th
Cir. 1996). In doing so, it acknowledged that "the amended
42 U.S.C. § 1981 does not expressly authorize private claim-
ants to sue state actors directly." *Id.* at 1210. However, it rea-
soned that Congress must have intended to imply such a
remedy, because the Supreme Court had previously inferred
a remedy against *private* actors, and by protecting "rights
from 'impairment' by *both* private and governmental enti-
ties, the amendment [made] clear that Congress intended a
comparable scope of protection against each type of defend-
ant." *Id.* at 1213.

However, the Ninth Circuit's holding was flawed in two
respects. First, the legislative history reveals that subsection
(c) was intended not to overrule *Jett* but "to codify [*Runyon*],
in which the Supreme Court held that § 1981 prohibited in-
tentional racial discrimination in private, as well as public,
contracting." *McGovern v. City of Philadelphia*, 554 F.3d 114,

120 (3d Cir. 2009). Congress was apparently responding to *Patterson*, in which the Court questioned *Runyon*'s correctness and adhered to it only out of respect for the principle of *stare decisis*. *See id.* ("Wary of the fact that future courts might not employ the principle of *stare decisis*, Congress established § 1981(c) to codify the holding of *Runyon*."). "Nothing in the 1991 amendments or its legislative history evinces Congress's desire to alter the Supreme Court's conclusion in *Jett*, nor was *Jett* even mentioned despite the fact that it was decided [only] two years before Congress enacted the 1991 Act." *Id.*

Second, the Ninth Circuit ignored the primary reason that the Court had previously declined to infer a remedy against state actors under § 1981, i.e., "whatever the limits of the judicial power to imply or create remedies, it has long been the law that such power should not be exercised in the face of an express decision by Congress concerning the scope of remedies available under a particular statute." *Jett*, 491 U.S. at 732. The fact that Congress has created a specific remedy against state actors under § 1983 still counsels against inferring a remedy against them under § 1981, even after the Civil Rights Act of 1991. *Butts v. Cnty. of Volusia*, 222 F.3d 891, 894 (11th Cir. 2000).

Although this is an issue of first impression in our circuit, all six circuits to consider the issue since *Federation of African American Contractors* was decided have rejected the Ninth Circuit's analysis. *See McGovern*, 554 F.3d at 120–21; *Arendale v. City of Memphis*, 519 F.3d 587, 598–99 (6th Cir. 2008); *Bolden v. City of Topeka*, 441 F.3d 1129, 1137 (10th Cir. 2006); *Oden v. Oktibbeha Cnty.*, 246 F.3d 458, 463–64 (5th Cir. 2001); *Butts*, 222 F.3d at 894; *Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 156 n.1

(4th Cir. 1995). We now join the overwhelming weight of au-
thority and hold that *Jett* remains good law, and consequent-
ly, § 1983 remains the exclusive remedy for violations of
§ 1981 committed by state actors.

## IV.    CONCLUSION

Because 42 U.S.C. § 1981 does not create a private right of
action against state actors, Campbell's § 1981 claim against
the FPD fails to state a claim upon which relief can be grant-
ed. Moreover, Campbell does not challenge the district
court's decision to deny him leave to replead under 42
U.S.C. § 1983. Therefore, the district court's order granting
the FPD's motion to dismiss is AFFIRMED.