Paul L. Maloney, United States District Judge
In 2010, the Grand Rapids Police Department overhauled its telephone system and replaced the existing technology with a VoIP (Voice over Internet Protocol) system. The new telephones included display screens, which provide information about the phone line and about incoming calls.
*1063 For Line 3407, the telephone line that is the subject of this lawsuit, the display screen stated that the line was not recorded. In December 2016, officers discovered that the calls placed and received on that line were actually being recorded. The parties dispute whether this situation, and the subsequent use of the recorded phone calls, violates the Federal Wiretapping Act. Few documents concerning Line 3407 have been located in discovery. As a result, the finder of fact must make inferences about how this situation came to be. And, because this Court must resolve all inferences against the moving party in a motion for summary judgment, the portion of the motions for summary judgment addressing violations of the Federal Wiretapping Act and related state laws must be denied.
I.
The events that eventually led to the discovery of the recorded line began in the early morning hours on November 19, 2016. An assistant county prosecutor was driving the wrong way on a one-way street. He struck a parked car, which had someone in it. Some of the officers who responded to the accident were wearing body cameras. At least one of the officers suspected that the prosecutor had been drinking. The officer called the official duty line, Line 3604, at the Grand Rapids Police Department. Line 3604 is a recorded line and the number is published and publically available. Line 3604 is one of two lines assigned to the Watch Commander's telephone.
Defendant Matthew Janiskee was the Watch Commander that night and answered the telephone. When the officer on the scene informed Janiskee that he suspected the prosecutor was "hammered," Janiskee told the officer to stop talking and to call him back on Line 3407. Line 3407 is the other line assigned to the Watch Commander's phone. Line 3407 is not a published telephone number. When Line 3407 is used, the display screen on the phone indicates that the line is not recorded. That morning, five telephone calls were made from the scene of the accident to Line 3407, three from one officer and two from a second officer.
One of the responding officers issued a citation to the assistant prosecutor for driving the wrong way. The officers did not ask the assistant prosecutor to take a breathalyzer test. The officers did not issue a citation to the assistant prosecutor for driving under the influence.
Approximately two weeks later, the Kent County Prosecutor called Janiskee asking why the officers did not cite the assistant prosecutor for drunk driving. Third-Party Defendant Deputy Chief Daniel Savage learned about the prosecutor's inquiry and reviewed the accident report and the some of the body camera footage. In reviewing the body camera footage, Savage learned that the officers on the scene had called Janiskee. Savage informed Third-Party Defendant Police Chief David Rahinsky about what he discovered, and Rahinsky ordered a formal investigation. As part of the investigation, Third-Party Defendant Captain Peter McWaters directed Third-Party Defendant Lieutenant David Schnurstein, who was the Grand Rapids Police Department Information Technology liason, to determine if there were recordings of calls to Line 3407. Schnurstein discovered that all calls to Line 3407 were recorded. McWaters passed the information to Third-Party Defendant Deputy Chief David Kiddle.
To avoid a conflict of interest, Rahinsky requested the Michigan State Police (MSP) conduct a criminal investigation. The Grand Rapids Police Department provided the recordings to MSP. At the end of *1064 its investigation, MSP provided all of its findings to Third-Party Defendant Kalamazoo County Prosecutor Jeffrey Getting.[1]
Multiple legal proceedings were initiated as the result of the accident, the citation, and what was discovered during the investigations. Criminal and civil proceedings were brought against the assistant prosecutor. Disciplinary proceedings were brought against the officers on the scene and against Janiskee. In the various proceedings, the Grand Rapids Police Officers Association (GRPOA) and Defendant Grand Rapids Police Command Officers Association (GRPCOA) asserted that the use of the recorded telephone calls violated both federal and state statutes.[2] Several news organizations submitted Freedom of Information Act (FOIA) requests to the City of Grand Rapids, to MSP, and to Getting seeking access to the recordings from Line 3407.
As a result of the FOIA requests, the City of Grand Rapids filed this declaratory action.[3] The City then filed an amended complaint (ECF No. 18), and then a second amended complaint (ECF No. 66), which is the controlling pleading. The City requests the Court issue an order determining its rights and obligations with respect to the Federal Wiretapping Act[4] and the Michigan Eavesdropping Act. The City requests the Court determine whether the recordings may be disclosed to others or may be used by the City without violating the two statutes.[5]
Janiskee filed counterclaims, cross-claims, and third-party claims, all as class action claims. (ECF No. 24.) Specifically, Janiskee asserts claims for (1) a violation of the Wire and Electronic Communications Interception Act, (2) a violation of the Fourth Amendment under 42 U.S.C. § 1983, (3) a violation of the federal Stored Communications Act, (4) a violation of *1065 Michigan's Wiretapping Statute, (5) a violation of Michigan's Eavesdropping Statute, (6) a common law tort claim for invasion of privacy, and (7) a privacy tort claim for intrusion on seclusion.[6] Janiskee also seeks exemplary damages. As part of his claim for relief, Janiskee requests a declaration that the City and the officers violated the Federal Wiretapping Act. He also seeks an injunction preventing the Grand Rapids Police Department from secretly intercepting and recording conversations on Line 3407.
II.
Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, show there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a) and (c) ; Payne v. Novartis Pharms. Corp. , 767 F.3d 526, 530 (6th Cir. 2014). The burden is on the moving party to show that no genuine issue of material fact exists, but that burden may be discharged by pointing out the absence of evidence to support the nonmoving party's case. Fed. R. Civ. P. 56(c)(1) ; Hollis v. Chestnut Bend Homeowners Ass'n , 760 F.3d 531, 543 (6th Cir. 2014). The facts, and the inferences drawn from them, must be viewed in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Matsushita Elec. Indust. Co. v. Zenith Radio Corp. , 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ). This standard is broad; "all justifiable inferences" must be made in favor of the party opposing the motion for summary judgment. Beard v. Banks , 548 U.S. 521, 529, 126 S.Ct. 2572, 165 L.Ed.2d 697 (2006). Courts err at the summary judgment stage when reasonable inferences are not drawn in favor of the nonmoving party. E.g. , Tolan v. Cotton , 572 U.S. 650, 134 S.Ct. 1861, 1868, 188 L.Ed.2d 895 (2014)
In resolving a motion for summary judgment, the court does not weigh the evidence and determine the truth of the matter; the court determines only if there exists a genuine issue for trial. Tolan , 134 S.Ct. at 1866 (quoting Anderson , 477 U.S. at 249, 106 S.Ct. 2505 ). The question is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson , 477 U.S. at 251-252, 106 S.Ct. 2505.
III.
The City of Grand Rapids, along with along with Third-Party Defendants Rahinsky, Savage and Kiddle, filed a motion for summary judgment. (ECF No. 72.) The City seeks summary judgment on its claims for declaratory relief and on Janiskee's counterclaims. The City offers several reasons why its actions and the conduct of its three supervising officers did not violate the various statutes. The City argues the recordings were inadvertent. Alternatively, the City argues that the recordings were made in the ordinary course of law enforcement duties. The City argues that Janiskee's constitutional claims should be resolved in the same manner as his statutory claims. Third-Party Defendants Rahinsky, Savage and Kiddle argue they are entitled to qualified immunity for all claims brought against them by Janiskee.
Third-Party Defendants McWaters and Schnurstein filed a concurrence with the *1066 City's motion and seek the same relief as the City and as Rahinsky, Savage and Kiddle.[7] (ECF No. 81.) Getting filed a response to the City's motion. (ECF No. 86). Getting concurs with the City's legal arguments and adopts them by reference.[8] (ECF No. 86.)
As part of his response to the motion, Janiskee requested discovery under Rule 56(d) of the Federal Rules of Civil Procedure. A hearing was held on the City's motion in August 2017. The Court granted Janiskee's request for discovery, and took the City's motion under advisement. (ECF No. 94.) In November 2017, Janiskee filed a second motion seeking additional discovery (ECF No. 108), which this Court also granted (ECF No. 116). The parties have filed supplemental briefs incorporating documents obtained in discovery.
Janiskee also moves for summary judgment. (ECF No. 123.) Janiskee requests partial summary judgment on the claims for declaratory relief. Janiskee contends the undisputed facts establish that the City violated the federal statute.
The Court has had the benefit of multiple rounds of briefs and two hearings on the motions for summary judgment.
A.
The Federal Wiretapping Act generally prohibits individuals from intentionally intercepting wire, oral, or electronic communication and also prohibits the use and disclosure of the contents of the communication obtained in violation of the statute.[9] 18 U.S.C. § 2511(1) ; see *1067 Huff v. Spaw , 794 F.3d 543, 548 (6th Cir. 2015). The statutory definition of "electronic, mechanical, or other device" creates an exception to liability when the device that intercepts the communication is used by "an investigative or law enforcement officer in the ordinary course of his duties." Id. § 2510(5). When the law enforcement exception applies to an intercepted communication, a party cannot establish a use or disclosure claim because "[t]o prevail on a use or disclosure claim, there must be an illegal interception." First v. Stark Cty. Bd. of Comm'rs , 234 F.3d 1268, at *4 (6th Cir. Oct. 4, 2000) (unpublished table opinion).
1.
Section 2511 generally prohibits intentional interceptions, and inadvertent interceptions of telephone calls will not provide the basis for a claim. Sanders v. Robert Bosch Corp. , 38 F.3d 736, 742-43 (4th Cir. 1994) (citing Thompson v. Dulaney , 970 F.2d 744, 748 (10th Cir. 1992) ); e.g. , Stark County , 234 F.3d 1268, at *4-*5. Similarly, the Michigan Eavesdropping Act prohibits "willfully us[ing] any device to eavesdrop upon the conversation without the consent of all parties thereto." Mich. Comp. Laws § 750.539c. The United States Supreme Court has stated that the common usage of willful is synonymous with the word intentional. McLaughlin v. Richland Shoe Co. , 486 U.S. 128, 133, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988).
Both Sanders and Stark County illustrate how design defects in telephone systems, which led to inadvertent interceptions, do not constitute violations of § 2511.[10] In Sanders , the security office for a plant installed a voice logger to record all telephone conversations on some of the telephone lines for the office. The voice logger was installed in January 1989 and, after personnel expressed displeasure, the logger was turned off in July 1989. Even though the recording device was turned off, a "hot mike" situation occurred. One of the microphones in the security office continued to pick up ambient noise and conversations, which could be heard in one of the plant's other offices. The court explained that this situation was a "design anomaly of the attendant console." Sanders , 38 F.3d at 739. In rejecting the plaintiff's § 2511 claim, the court concluded that the defendant did not intend to intercept the conversations, "the fact that the microphone was on was the result of a design defect and was not known to anyone." Id. at 743.
In Stark County , the Sheriff's Department was using mid-1970's era technology in its 911 emergency communication department. The technology was designed to record conversations over both radio and telephone systems. The manner in which the technology was set up, however, created "open mikes" in the dispatch room that recorded all conversations through the microphones on the dispatchers' headsets. The headsets initially included mute buttons, but the replacement headsets provided *1068 in 1993 did not contain any mute buttons and the dispatchers were informed that they needed to disconnect their headsets. An investigation several years later determined that a rear console microphone had been recording all conversations in the dispatch room. The court found that the defendants intended to record incoming and outgoing telephone calls, but did not intend to record personal conversations in the dispatch room. Stark Cty. , 234 F.3d 1268, at *5.
On the issue of intent, the parties generally identify the same documents and other evidence as support for their cross motions. The parties, however, reach different conclusions about the documents and other evidence. Paul Klimas is the Director of Information Technology for the City of Grand Rapids. Klimas was identified and offered by the City for a Rule 30(b)(6) deposition. In this litigation, the City has submitted a declaration from Klimas (ECF No. 89-6 Klimas Declaration PageID.939) and Janiskee has filed the complete transcript of Klimas's deposition (ECF No. 124-1 Klimas Dep. PageID.1776). In his declaration, Klimas states that Line 3407 has historically been in the Watch Commander's office. (Klimas Declaration ¶ 3 PageID.941.) Martin Clason is a network engineer employed by a contractor and assigned to the City of Grand Rapids as the Cisco Phone System Administrator. The City submitted two declarations from Clason. (ECF No. 74-6 and ECF No. 89-7.) The City also filed excerpts from Clason's deposition. (ECF No. 121-2 Clason Dep.)
The City offers a set of meeting notes from September 2010.[11] The first meeting was held on September 22, 2010. (ECF No. 130-1 PageID.2095.) The notes reflect that the Watch Commander's phone would be recorded. (Id. PageID.2096.) A second meeting occurred on September 29, 2010. (ECF No. 130-1 PageID.2097.) The notes to the second meeting indicate a discussion about call recording took place. (Id. PageID.2098.) The notes state "[t]here is a line on the Watch Commanders phone that doesn't need to be recorded. Can a licensed device be configured to NOT record calls on a specific line? Yes lines can be excluded." (Id. )
Both parties discuss the Statement of Work (SOW), a document regarding the new telephone system as it pertains to the Watch Commander and Records Unit.[12] (ECF No. 88-6 PageID.786.) Klimas explained that the SOW documents are the product of an interactive process. (Id. at 16 PageID.1781.) In this case, the vendor (CDW) created the SOW after the contracting party defines what it wants and needs. (Id. ) Klimas summarized the outcome: "The statement of work documents reflect what we set up." (Id. ) According to Klimas, the SOW establishes that "the intent was to record all inbound and outbound phone calls within the GRPD Watch Commander and Records Unit." (Klimas Declaration ¶¶ 4-5 PageID.941-42.) At his deposition, Klimas testified that the SOW establishes that Line 3407 was set up to be recorded. (Klimas Dep. at 19 PageID.1782; at 34 PageID.1785; at 35 PageID.1786.) Klimas stated that "It's the City's testimony to say that we originally designed the system to be set up that 3407 would be recorded." (Id. at 63 PageID.1793.) The *1069 SOW is the "only record" Klimas had "that says it was set up to be recorded." (Id. at 64 PageID.1793.) Klimas also testified that he would have had to approve every SOW during the implementation of the new phone system. (Id. at 21 PageID.1782.)
At his deposition, Martin Clason explained how a telephone line could be set to record calls in the Police Department's VoIP system.[13] The Police Department has to first purchase a license for each telephone for which calls will be recorded. (Clason Dep. at 17-18 PageID.1581.) To record a particular line associated with a telephone, information needs to be provided on two servers, the Call Manager server and the Quality Management (QM) server. (Id. at 7-8 PageID.1578-79; 19-20 PageID.1581-82.) In the Call Manager server, which can only be accessed using administrator credentials, the telephone line must be identified. (Id. at 10 PageID.1579.) Each line has a unique identification, and must be set to record. (Id. ) Similar steps need to be taken on the Quality Management server, which also requires administrator credentials for access. (Id. at 14 PageID.1580.)
Both parties also discuss a document titled "CallManager Subscriber Programming Record Part 4 of 6," which has a November 17, 2010 date. (ECF No. 121-1 PageID.1570.) The City refers to the document as an "implementation document" (ECF No. 121 Supp. Br. at 6 PageID.1559 referencing PageID.1573) and also as a "work order" (ECF No. 130 Reply to Supp. Resp. at 5 PageID.2078 referencing PageID.2103). The GRPCOA asserts that the document is an instruction from the City. (ECF No. 125 GRPCOA Supp. Br. at 3 PageID.1948.) The document summarizes the "configuration" for the Watch Commander's telephone and indicates that the display for Line 3407 says "Non Recorded Line." (ECF No. 121-1 PageID.1572-73.) The title page of the document bears the CDW logo and information about CDW. (Id. PageID.1570.) The second page of the document states that it was submitted by Scott Cox, a network engineer at CDW. (Id. PageID.1571.)
In addition to these documents, the City has produced declarations from a number of individuals. Rahinsky attests that he first learned that Line 3407 was recorded in December 2016 as the result of the internal investigation. (ECF No. 74-1 Rahinsky Dec. ¶¶ 15-16 PageID.542.) Rahinsky further attests that the recordings were reviewed after receiving advice from legal counsel. (Id. ¶ 19 PageID.543.) Savage attests that prior to December 2016, he thought Line 3407 was not recorded and he has no knowledge how Line 3407 came to be recorded. (ECF No. 74-2 Savage Dec. ¶¶ 4-5 PageID.563.) Kiddle attests that until December 2016 he thought Line 3407 was an unrecorded line, and he never directed anyone to record Line 3407 and was never directed by anyone to record Line 3407. (ECF No. 74-3 Kiddle Dec. ¶¶ 3-5 PageID.573.) McWaters attests that prior to receiving information from Schnurstein in December 2016, he thought that Line 3407 was not recorded and he never directed anyone to record Line 3407 and was never directed by anyone to record line 3407. (ECF No. 74-4 McWaters Dec. ¶¶ 16-20 PageID.578.) Schnurstein attests that before December 2016, he thought that Line 3407 was not recorded, and he never directed anyone to record Line 3407 and was never directed by anyone to record Line 3407. (ECF No. 75-5 Schnurstein Dec. ¶¶ 3-5 PageID.581.)
*1070 The City is not entitled to summary judgment on claims relating to its assertion that the recordings were inadvertent. For its motion, the City has not demonstrated a lack of genuine dispute that the recording of conversations on Line 3407 was not intentional. Unlike the systems involved in Sanders and Stark County , there was no design defect that led to the accidental interception of conversations. Taking the evidence in the light most favorable to Janiskee, the City designed the telephone system to record all calls to the Watch Commander's designated lines. Klimas, as the City's spokesperson, repeatedly testified that the SOW established that the Line 3407 was set up to be recorded. He testified that if the SOW was to change, then there would be an order reflecting that change. (Klimas Dep. at 15 PageID.1781.) The City has no documents showing an order to change Line 3407 from recorded to unrecorded. (Id. at 36 PageID.1786.) And, the system was set up to record the calls to the Watch Commander's lines, including calls to Line 3407. The evidence in the record also establishes that setting up the system to record a specific line requires some effort. Clason's testimony identified the multiple steps that must be taken, all of which must be performed by someone with administrative authorization to access the servers. These necessary steps, which must be performed for each line, distinguishes this situation from the design flaws discussed in Sanders and Stark County .
The other documents do not establish a lack of dispute about the City's intent. The November 2017 CallManager Subscriber Programming Record Part 4 of 6 establishes only that the display for Line 3407 indicates that the line is not recorded, a fact on which all the parties agree.[14] For City's motion, the Court cannot infer that the document is a work order or instruction from the City to CDW. The document is not a SOW. The document was prepared by CDW, not the City, and merely describes the configuration. The City has no documents indicating how Line 3407 came to be labeled as unrecorded, either as an initial label when the system was set up or when the label was changed. (Klimas Dep. at 41 PageID.1787.) The meeting notes establish only that someone asked whether all of the Watch Commander lines had to be recorded, or if one of the two lines could be unrecorded. The record contains no documents establishing that the City told CDW to set up Line 3407 as an unrecorded line or to change Line 3407 from recorded to unrecorded.
The City argues that the documents require the conclusion that someone from the Police Department ordered the service provider to change Line 3407 from recorded status to unrecorded status, and not just the label. Not so. The City's argument is a reasonable inference from the facts contained in the documents. But, for the City's summary judgment motion, reasonable inferences are made in Janiskee's favor, not the City's favor. Klimas makes this inference in his declaration. He states that his only explanation for the situation is that someone in the Police Department requested that the label for Line 3407 be changed to unrecorded, and the technician who made the change did not understand that the recording function was also supposed to be turned off. (Klimas Declaration ¶ 9 PageID.943.) Stating an inference from available information in a declaration does not transform the inference into a fact. Klimas is offering an inference from facts, an inference that this Court cannot accept for the purpose of the City's motion.
*1071 The City also argues that all of the individual defendants and relevant personnel have stated that they did not know that Line 3407 was being recorded. The City further argues that some of the individual defendants have attested that they did not order Line 3407 to be recorded. But, the SOW documents, as explained by Klimas, establish the City's intent to record the line. The evidence about the individual officers' lack of knowledge that Line 3407 was recording conversations does not establish a lack of a genuine issue about the City's intent. Even if none of the individual defendants were aware that the line was being recorded, and none of those particular individuals ordered that the line be recorded, the City could still have intended that Line 3407 be recorded. It is not clear from the record that these individuals are the only individuals since 2010 with the authority to order that Line 3407 be recorded.
Similarly, Janiskee is not entitled to summary judgment on his claims that require him to demonstrate the recording was intentional. Janiskee has not established a lack of a genuine issue of material fact that the City intended to record Line 3407. Taking the evidence in the light most favorable to the City, the City did not intend for Line 3407 to be recorded. For Janiskee's motion, reasonable inferences from the evidence must be made in favor of the City. The September 27, 2010, meeting notes establish that one of the lines for the Watch Commander's phone did not need to be set to record. The Court can reasonably infer that the inquiry and discussion was about Line 3407. The service contractor, CDW, created the SOW, not the City. From the evidence in the record, it is a reasonable inference that the City did not want Line 3407 to be recorded, and that intention was not reflected in the SOW.
The display for Line 3407 also gives rise to a reasonable inference undermining Janiskee's motion. The Court can reasonably infer that the reason the display informed individuals that the line was not recorded was because the line was not supposed to be recorded. Supporting these inferences, none of the named individuals were aware that Line 3407 was actually being recorded. The reasonable inferences give rise to genuine disputes of material facts.
2.
The Court next considers the exceptions to liability contained in the Federal Wiretapping Act. The statute contains two exceptions or exclusions for liability, one for the "provider of wire or electronic communication service in the ordinary course of its business" and one for "an investigative or law enforcement officer in the ordinary course of his duties." 18 U.S.C. § 2510(5). The Sixth Circuit has held that for the first exception, the phrase "the ordinary course" "requires that the use be (1) for a legitimate business purpose, (2) routine, and (3) with notice." Adams v. City of Battle Creek , 250 F.3d 980, 984 (6th Cir. 2001). In the same opinion, the court also found, based on the facts presented, that there was no need to analyze separately the two exceptions. Id. The court acknowledged that police departments and prisons "routinely and indiscriminately" record all phone activity in and out of the institution. Id. And, although the "practice is well known in the industry and in the general public ... court have ruled that even prisoners are entitled to some form of notice that such conversations may be monitored or recorded." Id. (collecting cases). Accordingly, binding precedent interprets both exceptions as requiring notice. The notice requirement in Adams stands in contrast to the holding in Amati v. City of Woodstock , 176 F.3d 952, 955 (7th Cir. 1999). In *1072 Amati , the Seventh Circuit rejected the argument that the law enforcement exception in the Wiretapping Act required notice to the individuals whose conversations were monitored. The court found the phrase "ordinary course," as used in the law enforcement exclusion, "imports implicit notice." Id. The court reasoned that police departments routinely record calls to and from the station, a fact generally known and sufficient to imply notice. Id.
The City is not entitled to summary judgment on the law enforcement exception to liability. The City has not established a lack of a genuine issue of material fact of the notice requirement. The City relies on the holding in Amati . (ECF No. 74 Pl. Br. at 13-16 PageID.527-30.) But, this Court must follow the holding in Adams , not Amati , and Adams requires notice for the business and the law enforcement exceptions to apply. For Line 3407, there are factual distinctions that undermine the application of the holding in Amati . Line 3407 is not a public line, the number was not published so that the general public could call the police using that number. And, the display for the Line 3407 indicated that the line was not recorded. Taking these two facts in the light most favorable to Janiskee, there was no implicit notice that Line 3407 was recorded such that the law enforcement exception would apply. Finally, even Amati recognizes that recording conversations on a telephone line after announcing that the line was not recorded would not fall under the ordinary course of law enforcement. 176 F.3d at 956.
The City's Administrative Policy, which states that users of the City's electronic equipment have no expectation of privacy, (Rahinsky Dec. ¶ 5 PageID.541; ECF No. 74-1 Administrative Policy PageID.547), does not resolve the matter for the City. The display associated with Line 3407, which indicated the line was not recorded, is sufficient to create a genuine issue of material fact whether the Administrative Policy provided the necessary notice. See, e.g. , Kiessel v. Oltersdorf , No. 1:09-cv-179, 2010 WL 4878806, at *3 (W.D. Mich. Nov. 23, 2010) (denying summary judgment on the ordinary course of business exception when the employee conduct policy stated that all telephone lines could be recorded but the particular telephone line was identified as "private out."). The specificity of the notice associated with Line 3407 creates a genuine issue of material fact when considered against the general statement in the Administrative Policy.
Janiskee is not entitled to summary judgment on the law enforcement exception. Janiskee has not established a lack of a genuine issue of material fact concerning the notice requirement. The City's Administrative Policy explicitly states that users of the City's electronic equipment have no expectation of privacy when using the equipment. The Administrative Policy also states that users consent to having their use of the equipment monitored and that their work can be accessed and reviewed. (ECF No. 74-1 Administrative Policy PageID.547.) Taking these provisions in the light most favorable to the City, there exists a genuine issue of material fact whether the "not recorded" label for Line 3407 could be reasonably relied upon.
B.
The City argues that Janiskee's constitutional claim must be dismissed. The City asserts that Janiskee's constitutional claims are no broader than his statutory claims. The City reasons that the Administrative Policy undermines any claim Janiskee has based on an expectation of privacy. The City reasons that because the statutory claims fail, the constitutional claims must also fail.
*1073 The City is entitled to summary judgment on Janiskee's constitutional claim. In Adams , the Sixth Circuit concluded that courts should avoid reaching constitutional issues when a comprehensive statute "designed to protect specific constitutional values may be read to provide the exclusive remedies in the field so long as the statute itself suffers no constitutional infirmity." 250 F.3d at 986. The court concluded that Title III constitutes such a comprehensive scheme and that "Congress made the Act the primary vehicle by which to address violations of privacy interests in the communication field." Id. Like the plaintiff in Adams , Janiskee has not argued that the Fourth Amendment offers greater or broader protections than the statute or that there is any difference between the conduct relevant to his statutory claim and the conduct relevant to his constitutional claims. See, id. Janiskee does not directly address this argument in his response brief.[15] Like the plaintiff's constitutional claims in Adams , Janiskee's "constitutional issues are pretermitted." Id.
C.
Defendants Rahinsky, Savage, and Kiddle argue they are entitled to qualified immunity for the claims brought against them. McWaters, Schnurstein and Getting rely on the arguments advanced by the Rahinsky, Savage and Kiddle.
"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald , 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity is a legal question for the court to resolve. Everson v. Leis , 556 F.3d 484, 494 (6th Cir. 2009) (citing Elder v. Holloway , 510 U.S. 510, 516, 114 S.Ct. 1019, 127 L.Ed.2d 344 (1994) ). When resolving a governmental employee's assertion of qualified immunity, the court determines (1) whether the facts the plaintiff has alleged or shown establishes the violation of a right, and (2) whether the right at issue was clearly established at the time of the incident. Stoudemire v. Michigan Dep't of Corr. , 705 F.3d 560, 567 (6th Cir. 2013) (citing Pearson v. Callahan, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) ). Courts may examine the two prongs in any order, depending on the facts and circumstances of the case. Id. at 567-68.
Once the qualified immunity defense is raised, the plaintiff bears the burden of demonstrating both that the challenged conduct violates a constitutional or statutory right and that the right was so clearly established at the time that " 'every reasonable officer would have understood that what he [was] doing violate[d] that right.' " T.S. v. Doe , 742 F.3d 632, 635 (6th Cir. 2014) (quoting Ashcroft v. al-Kidd , 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011) ) (alterations in T.S. ). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.' " al-Kidd , 563 U.S. at 743, 131 S.Ct. 2074 (quoting Malley v. Briggs , 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) ).
1.
Based on the arguments raised in the briefs, Rahinsky, Savage, Kiddle, *1074 McWaters Schnurstein, and Getting are entitled to qualified immunity for any constitutional claims brought against them.[16] Janiskee's response does not address the argument raised in motion filed by the City, Rahinsky, Savage and Kiddle. The third-party defendants argue that their actions did not violate any clearly established right. Although warrantless searches are per se unreasonable, there are exceptions to the rule, including the special needs of the workplace. City of Ontario v. Quon , 560 U.S. 746, 760-61, 130 S.Ct. 2619, 177 L.Ed.2d 216 (2010) (citing O'Connor v. Ortega , 480 U.S. 709, 725, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987) ; id. at 732, 107 S.Ct. 1492 (Scalia, J. concurring) ). As explained in Quon , under the O'Connor plurality, as part of an investigation of work-related misconduct, "a government employer's warrantless search is reasonable if it is justified at its inception and if the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the circumstances giving rise to the search." Id. at 761, 130 S.Ct. 2619 (quotation marks omitted) (quoting O'Connor , 480 U.S. at 725-26, 107 S.Ct. 1492.)
Because the third-party defendants have raised the qualified immunity defense, and have specifically identified the Quon / O'Connor exception to the general warrant requirement, the burden falls on Janiskee to establish that the constitutional rights allegedly violated were clearly established at the time. He has not done so. In his brief, Janiskee relies on the broad holding in Katz v. United States , 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) that electronic surveillance, specifically monitoring a telephone call, requires a warrant. (ECF No. 82 Janiskee's Br. at 7-8 PageID.672-73.) But, that proposition was the starting point for O'Connor and Quon . In both cases, the Supreme Court then identified an exception to that broad prohibition, the exception on which the third-party defendants rely.[17] Janiskee does not address the specific argument, he does not discuss either O'Connor or Quon , or attempt to explain why this situation does not fall under the workplace misconduct exception to the warrant requirement.[18]
2.
Based on the arguments raised in the briefs, Rahinsky, Savage, Kiddle, McWaters Schnurstein, and Getting are also entitled to qualified immunity for the statutory claims brought against them. For qualified immunity under the Federal Wiretapping Act, the Court considers whether the law was clearly established such that a reasonable officer would know that his or her conduct was violating the defendant's statutory rights. See Blake v. Wright , 179 F.3d 1003, 1013 (6th Cir. 1999) ("Turning to the facts of this case, we must examine whether the law surrounding Title III was clearly established to put Wright on notice that his actions violated Title III."); accord, Drimal v. Tai , 786 F.3d 219, 224-26 (2d Cir. 2015). In his response, Janiskee addresses *1075 only the assertion of qualified immunity for the constitutional claim and does not address qualified immunity for the statutory claims. By failing to respond to the request for qualified immunity on the statutory claims, Janiskee waives his opposition to the argument. See Alexander v. Carter for Byrd , 733 F. App'x 256, 261-62 (6th Cir. 2018) ("When a plaintiff fails to address a claim in response to a motion for summary judgment, the claim is deemed waived.") (internal quotation marks and edits omitted) (citing Haddad v. Sec'y, U.S. Dept. of Homeland Sec. , 610 F. App'x 567, 568-69 (6th Cir. 2015) ).
3.
At the hearing, Janiskee argued that the defenses to liability for violations of the Federal Wiretapping Act are limited to those defenses specifically enumerated in the statute. See 18 U.S.C. § 2520(d). The circuit court for the District of Columbia reached the same conclusion. See Berry v. Funk , 146 F.3d 1003, 1013-14 (D.C. Cir. 1998). The Sixth Circuit, however, rejected the reasoning in Berry and held that a defendant may raise a qualified immunity defense to alleged violations of the Federal Wiretapping Act. Blake v. Wright , 179 F.3d 1003, 1012-13 (6th Cir. 1999) ; accord John K. MacIver Inst. for Pub. Policy, Inc. v. Schmitz , 885 F.3d 1004, 1015 (7th Cir. 2018) ("We have consistently recognized qualified immunity for alleges Wiretap Act violations."); Tapley v. Collins , 211 F.3d 1210, 1216 (11th Cir. 2000) ("We agree with the Sixth Circuit's holding and reasoning in Blake and disagree with the D.C. Circuit's Berry decision.")
IV.
To violate the Federal Wiretapping Act a recording must be intentional. Because both motions must make inferences about the City's intent from the available evidence, neither party is entitled to summary judgment on their requests for declarations about the Federal Wiretapping Act and related statutes. For summary judgment motions, reasonable inferences must be made against the moving party. The City is entitled to summary judgment on Janiskee's constitutional claim because Title III is a comprehensive statute enacted to fully occupy the issues of wireless surveillance. As a result, the Sixth Circuit has directed district courts to avoid reaching constitutional issues. Finally, Third-Party Defendants Rahinsky, Savage, Kiddle, McWaters, Schnurstein and Getting are entitled to qualified immunity because Janiskee has not established that his rights were clearly established at the time such that these officers knew that their actions violated Janiskee's constitutional and statutory rights.
ORDER
Consistent with the accompanying Opinion, the motion for summary judgment filed by the City, Rahinsky, Savage and Kiddle (ECF No. 72) is GRANTED IN PART AND DENIED IN PART. Because Rahinsky, Savage, Kiddle, McWaters, Schnurstein and Getting are entitled to qualified immunity, Janiskee's claims against those individuals are dismissed. Janiskee's motion for summary judgment (ECF No. 123) is DENIED.
IT IS SO ORDERED.

In the first and second amended complaints, the City named Jeffrey Getting as a defendant in this proceeding, and Janiskee named Getting as a cross-defendant. The City has since dismissed its claim against Getting. (ECF No. 107.) As the lawsuit and claims are currently postured, Getting is a third-party defendant.

The City named the GRPOA as a defendant in its initial pleading. The City voluntarily dismissed GRPOA from this lawsuit. (ECF No. 16.)

The City initially named a number of the officers involved and the Michigan State Police as defendants. The City and Janiskee both voluntarily dismissed the Michigan State Police from their claims. (ECF Nos. 59 and 60.) The Court has not identified by name the other individuals who have also been dismissed since the lawsuit was filed.

18 U.S.C. § 2511 was enacted in 1968 as part of Title III of the Omnibus Crime Control and Safe Streets Act, Public Law 90-351."Much of Title III was drawn to meet the constitutional requirements for electronic surveillance enunciated by" the Supreme Court in Berger v. New York , 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967) and Katz v. United States , 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). United States v. United States Dist. Court for the Eastern Dist. of Michigan , 407 U.S. 297, 302, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972). Section 2511 has been amended multiple times over the years, including in 1986 as part of the Electronic Communications Privacy Act, Public Law No. 99-508. Courts have referred to Section 2511 as both the Federal Wiretapping Act, e.g. , Fultz v. Gilliam , 942 F.2d 396, 397 (6th Cir. 1991), and the Electronic Communications Privacy Act, e.g. , United States v. Meriwether , 917 F.2d 955, 959-60 (6th Cir. 1990).

MLive Media Group filed a lawsuit in state court contesting the City's refusal to release the recordings. The state court judge declined to order the City to release the recordings until this Court resolved the matter. In September 2017, the Michigan Court of Appeals reversed the decision and ordered that the City comply with the FOIA request and release the recordings. MLive Media Group v. City of Grand Rapids , 321 Mich.App. 263, 909 N.W.2d 282, 289 (2017).

The terms used to identify the separate counts are somewhat confusing. The Wire and Electronic Communication Interception Act is another moniker for the Federal Wiretapping Act. Janiskee cites the same statute general statute for counts 3 and 4, but uses two different titles to reference the statute.

McWaters and Schnurstein should have filed their own motion, rather than a concurrence. Rule 10(c), cited in the concurrence, permits parties to adopt, by reference, statements made in pleadings. Fed. R. Civ. P. 10(c). The Court is unaware of any authority interpreting Rule 10(c) as permitting a written motion for summary judgment by reference another party's Rule 56 motion. Generally, pleadings are distinct from motions. See Fed. R. Civ. P. 7. The rules for captions and other matters of form that apply to pleadings, also apply to motions. Fed. R. Civ. P. 7(b)(2). But, Rule 7(b)(2) does not authorize a party to file a motion by submitting a statement of concurrence.
In the interests of judicial efficiency, the Court will consider McWaters and Schnurestein's submission as a Rule 56 motion. The document clearly expresses an intent advance the same arguments and to seek the same relief as the other officers. The parties have treated the concurrence as a motion for summary judgment. Janiskee was afforded the opportunity to depose Schnurstein. Janiskee addressed the request for qualified immunity in his supplemental brief. (ECF No. 126 Janiskee Supp. Br. at 2-3 PageID.1965-66.) Janiskee has not identified any facts or law indicating that McWaters or Schnurstein should be treated differently than Rahinsky, Savage and Kiddle.

Like McWaters and Schnurstein, Getting should have filed a separate motion. For the same reasons that the Court will treat McWaters and Schnurstein's submission as a motion, the Court will also treat Getting's submission as a Rule 56 motion. In his supplemental brief, Janiskee argues that Getting publicly disclosed the contents of the recordings at a press conference. (ECF No. 126 Janiskee Supp. Br. at 6 PageID.1969.) Getting did not file a supplement brief or reply.

(1) Except as otherwise specifically provided in this chapter any person who-
(a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication;
(b) intentionally uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when-
(i) such device is affixed to, or otherwise transmits a signal through a wire, cable, or other like connection used in wire communication; or
...
(c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;
(d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection; or ....
18 U.S.C. § 2511(1)

The City also relies on an opinion issued in South Bend v. South Bend Common Council , No. 3:12-cv-475, 2015 WL 13658504 (N.D. Ind. 2015). The Seventh Circuit has since vacated the district court's judgment, City of South Bend v. South Bend Common Council , 865 F.3d 889 (7th Cir. 2017), concluding that there was no subject matter jurisdiction. Accordingly, the district court's opinion bears no weight.

A cover letter included as part of the City's exhibit indicates that the meeting notes were sent to Janiskee on April 18, 2018. (ECF No. 130-1 PageID.2088.) Janiskee filed his cross motion for summary judgment on March 23, 2018, and his supplemental brief in response on April 20, 2018. Likely, Janiskee did not receive the notes in time to incorporate a discussion of the notes into his submissions.

Page 3 (SOW 3) of the document indicates it was created on October 5, 2010, and edited twice that month. (ECF No. 88-6 PageID.788.)

For the purpose of these motions, the Court offers a simplistic summary of the steps to record a telephone line. Details have been omitted. The Court is not writing a step-by-step manual.

The City has produced other spreadsheets that list all of the police department phones, which also state that Line 3407 displays the message that the line is not recorded.

Janiskee does not directly address the City's discussion of Adams on this point. Janiskee does, however, assert that the individual defendants are not entitled to qualified immunity and argues that the defendants violated his Fourth Amendment rights.

Although the constitutional claims are dismissed, because the parties have raised the issue, the Court will address it as an alternative reason to dismiss the constitutional claims.

In Quon , the Supreme Court found that the search was reasonable, and avoided identifying the proper framework for analyzing a Fourth Amendment claim against government employers. See Quon , 560 U.S. at 765-66, 130 S.Ct. 2619 (Stevens, J. concurring). Quon thus reinforces the conclusion that a governmental employee's privacy rights, which provide the basis for the constitutional protection, are not clearly established.

Because Janiskee has not met his burden to show that the law was clearly established, disputes of material fact whether the right was violated do not preclude summary judgment on qualified immunity.